# No. 23-384

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

AVRAHAM GOLDSTEIN; MICHAEL GOLDSTEIN; FRIMETTE KASS-SHRAIBMAN; MITCHELL LANGBERT; JEFFREY LAX; MARIA PAGANO,
*Plaintiffs-Appellants,*

v.

PROFESSIONAL STAFF CONGRESS/CUNY; CITY UNIVERSITY OF NEW YORK; JOHN WIRENIUS, in his official capacity as Chairperson of the New York Public Employee Relations Board; ROSEMARY A. TOWNLEY, in her official capacity as Member of the New York Public Employee Relations Board; ANTHONY ZUMBOLO, in his official capacity as Member of the New York Public Employee Relations Board; CITY OF NEW YORK; THOMAS P. DINAPOLI, in his official capacity as New York State Comptroller,
*Defendants-Appellees.*

On Appeal from the United States District Court, Southern District of New York, Case No. 1:22-cv-00321-PAE (Hon. Paul A. Engelmayer)

**ANSWERING BRIEF OF DEFENDANT-APPELLEE
PROFESSIONAL STAFF CONGRESS/CUNY**

HANAN B. KOLKO
Cohen, Weiss and Simon LLP
900 Third Avenue, Suite 2100
New York, New York 10022
(212) 356-0214
hkolko@cwsny.com

SCOTT A. KRONLAND
MATTHEW J. MURRAY
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
(415) 421-7151
skronland@altber.com

*Attorneys for Defendant-Appellee Professional Staff Congress/CUNY*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee Professional Staff Congress/CUNY has no parent corporation or any stock held by any publicly held corporation.

## TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT........................................ i

TABLE OF CONTENTS........................................................................... ii

TABLE OF AUTHORITIES .................................................................... iv

INTRODUCTION ................................................................................. 1

ISSUE PRESENTED ............................................................................. 2

STATEMENT OF THE CASE.................................................................. 2

    1.    The Taylor Law and exclusive representation ................................... 2

    2.    Plaintiffs' complaint ....................................................................... 5

    3.    The district court's ruling ................................................................ 7

SUMMARY OF ARGUMENT ................................................................. 9

ARGUMENT ...................................................................................... 11

    I.    Controlling precedent forecloses Plaintiffs' First Amendment challenge to New York's system of exclusive-representative collective bargaining. ......................................................... 11

        A.    *Knight* holds that exclusive-representative collective bargaining does not unconstitutionally compel speech or expressive association........................................... 13

        B.    *Janus* maintained the constitutionality of exclusive-representative collective bargaining. ....................................... 19

        C.    The Taylor Law's duty of fair representation is consistent with *Janus* and the First Amendment. .................................... 20

    II.    Even if not foreclosed by precedent, Plaintiffs' arguments lack support in caselaw about compelled speech and compelled expressive association. ......................................................... 26

III.   Exclusive-representative collective bargaining would satisfy
       heightened scrutiny ............................................................... 35

CONCLUSION ........................................................................................ 39

CERTIFICATE OF COMPLIANCE ...................................................... 40

CERTIFICATE OF SERVICE ............................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza v. Pyett*,
  556 U.S. 247, 271 (2009) ....................................................................32

*Adams v. Teamsters Union Loc. 429*,
  2022 WL 186045 (3d Cir. Jan. 20, 2022) ...................................12, 16

*A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*,
  87 N.Y. 2d 574 (1996) ......................................................................24

*Akers v. Md. State Educ. Ass'n*,
  990 F.3d 375 (4th Cir. 2021) .............................................................12

*Bennett v. AFSCME Council 31*,
  991 F.3d 724 (7th Cir. 2021) .............................................................12

*Bierman v. Dayton*,
  900 F.3d 570 (8th Cir. 2018) .............................................................12

*Board of Educ. of Westside Cmty. Sch. v. Mergens*,
  496 U.S. 226 (1990).............................................................................30

*Branch v. Commonwealth Emp. Rels. Bd.*,
  120 N.E.3d 1163 (Mass. 2019) ..........................................................12

*Budd v. Valentine*,
  283 N.Y. 508, 511 (1940)....................................................................24

*City of Madison, Joint Sch. Dist. No. 8 v. Wis. Employee Relations Comm'n*,
  429 U.S. 167 (1976)..............................................................................27

*Civ. Serv. Bar Ass'n, Loc. 237, Int'l Bhd. of Teamsters v. City of New York*,
  64 N.Y.2d 188 (N.Y. Ct. App. 1984) .................................................34

*CWM Chemical Servs., LLC v. Roth*,
  6 N.Y.3d 410 (2006) ............................................................................26

iv

*D'Agostino v. Baker*,
812 F.3d 240 (1st Cir. 2016) .......................................................................*passim*

*Elrod v. Burns*,
427 U.S. 347 (1976) ...........................................................................................31

*Ford Motor Co. v. Huffman*,
345 U.S. 330 (1953) ...........................................................................................19

*General Elec. Co. v. New York State Dept. of Labor*,
936 F.2d 1448 (2d Cir. 1991) ...........................................................................26

*Harris v. Quinn*,
573 U.S. 616 (2014) .......................................................................................5, 37

*Hendrickson v. AFSCME Council 18*,
992 F.3d 950 (10th Cir. 2021) ..........................................................................12

*Hicks v. Miranda*,
422 U.S. 332 (1975) ...........................................................................................13

*Hill v. Serv. Emps. Int'l Union*,
850 F.3d 861 (7th Cir. 2017) ......................................................................12, 33

*Janus v. AFSCME, Council 31*,
138 S. Ct. 2448 (2018) ...............................................................................*passim*

*Jarvis v. Cuomo*,
660 F. App'x 72 (2d Cir. 2016) ...............................................................1, 11, 15

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ..............................................................................24

*Knight v. Minn. Cmty. Coll. Faculty Ass'n*,
460 U.S. 1048 (1983) .........................................................................................13

*Knight v. Minn. Cmty. Coll. Faculty Ass'n*,
571 F.Supp. 1 (D. Minn. 1982) .........................................................................13

*Lathrop v. Donohue*,
367 U.S. 820 (1961) ...........................................................................................29

*Lehnert v. Ferris Fac. Ass'n*,
    500 U.S. 507 (1991)......................................................................27, 39

*Mentele v. Inslee*,
    916 F.3d 783 (9th Cir. 2019) ............................................12, 36, 37

*Minnesota Board for Community Colleges v. Knight*,
    465 U.S. 271 (1984)......................................................................*passim*

*Mulhall v. UNITE HERE Local 355*,
    618 F.3d 1279 (11th Cir. 2010) ..........................................33

*O'Hare Truck Serv., Inc. v. City of Northlake*,
    518 U.S. 712 (1996)......................................................................31

*Oliver v. SEIU Local 668*,
    830 F. App'x 76 (3d. Cir. 2020) ..........................................12

*Pacific Gas & Electric Company. v. Public Utilities Commission*,
    475 U.S. 1 (1986)..........................................................................31

*Peltz-Steele v. UMass Fac. Fed'n*,
    60 F.4th 1 (1st Cir. 2023).....................................................11, 20, 29

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968)......................................................................35

*Reisman v. Associated Facs. of Univ. of Maine*,
    356 F.Supp.3d 173 (D. Me. 2018) ....................................36

*Reisman v. Associated Facs. of Univ. of Maine*,
    939 F.3d 409 (1st Cir. 2019)..........................................11, 17, 28, 29

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
    547 U.S. 47 (2006)..................................................................2, 28, 35

*Rutan v. Republican Party of Ill.*,
    497 U.S. 62 (1990)........................................................................31

*Schneider Moving & Storage Co. v. Robbins*,
    466 U.S. 364 (1984)......................................................................21

*Smith v. Ark. State Hwy. Emps., Loc. 1315*,
    441 U.S. 463 (1979)...............................................................................32

*State Comm'n for Hum. Rts. v. Farrell*,
    24 A.D.2d 128 (N.Y. App. Div. 1965) ..............................................34

*Steele v. Louisville & N.R. Co.*,
    323 U.S. 192 (1944).......................................................................21, 32

*Thompson v. Marietta Educ. Ass'n*,
    972 F.3d 809 (6th Cir. 2020) ............................................................12

*U. S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*,
    413 U.S. 548 (1973).............................................................................36

*UNITE HERE Local 355 v. Mulhall*,
    134 S. Ct. 594 (2013)...........................................................................33

*Uradnik v. Inter Fac. Org.*,
    2018 WL 4654751 (D. Minn. Sept. 27, 2018)..................................36

*Vaca v. Sipes*,
    386 U.S. 171, 190 (1967).....................................................................34

*Virgin Atlantic Airways, Ltd. v. National Mediation Board*,
    956 F.2d 1245 (2d Cir. 1992) ............................................................33

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008).............................................................................28

**Statutes, Regulations, and Rules**

29 U.S.C.
    § 158(d)................................................................................................4
    § 159....................................................................................................4

42 U.S.C.
    § 1983..................................................................................................6
    § 2000e-2(c).......................................................................................34

45 U.S.C. § 152 Fourth .........................................................................4

Fed. R. Civ. P. 12(b)(6)..........................................................................7

Fla. Stat. § 447.401 ...............................................................................25

Neb. Rev. Stat. § 48-838(4) ...................................................................25

N.Y. Civ. Serv. Law
   § 200.................................................................................................3, 38
   §§ 200-204 .............................................................................................3
   §§ 200-215 .............................................................................................2
   § 202..............................................................................................3, 4, 31
   § 204......................................................................................................3
   § 204(2) ...........................................................................................3, 29
   §§206-207 .............................................................................................18
   § 207(1)(a) ...........................................................................................18
   § 209-a .................................................................................................31
   § 209-a(1)(a) ........................................................................................31
   § 209-a(2)(a). .......................................................................................31
   § 209-a(2)(c) .........................................................................4, 10, 23, 24
   §§ 210-211 .............................................................................................3

New York's Public Employees' Fair Employment Act, N.Y. Civil
   Service Law §§ 200-215 .........................................................................2

N.Y. Exec. Law
   §290 et seq. (McKinney 2022) .............................................................34

8 N.Y.C. Admin. Code §8-101 et. seq. ..................................................34

2018 N.Y. Sess. Laws, c. 59, Part RRR § 4.............................................24

R.I. Gen. Laws
   § 28-9.1-(18)(a).....................................................................................25
   § 28-9.2-(18)(a).....................................................................................25

**Other Authorities**

Catherine L. Fisk & Martin H. Malin, *After Janus,* 107 Cal. L. Rev.
   1821 (2019)......................................................................................25, 38

Governor's Committee on Public Employee Relations, Final Report
   (Mar. 31, 1966), available at https://perb.ny.gov/wp-
   content/uploads/2018/04/1966-Taylor-Committee-Report.pdf.....................3, 37

*Harris v. Quinn*, 573 U.S. 616 (2014) (No. 11-681), 2013 WL
  6907713, Br. for New York et al. as Amici Curiae Supporting
  Respondents ......................................................................................... 5

*Janus v. AFSCME, Council 31,*
  Tr. of Oral Argument, No. 16-1466 (Feb. 26, 2018),
  https://www.supremecourt.gov/oral_arguments/argument_transcrip
  ts/2017/16-1466_bocf.pdf .................................................................... 23

News Release, Bureau of Labor Statistics, U.S. Dep't of Labor, Union
  Members—2022 (Jan. 19, 2023), Table 3 (union affiliation 2022),
  at https://www.bls.gov/news.release/pdf/union2.pdf. ......................... 5

Martin H. Malin, *The Motive Power in Public Sector Collective
  Bargaining*, 36 Hofstra Lab. & Emp. L.J. 123 (2018) ...................... 37

S. Rep. No. 74-573, reprinted in 2 Leg. Hist. of the NLRA 2313 (1935) ............... 5

ix

## INTRODUCTION

New York's Taylor Law authorizes collective bargaining to set employment terms for public employees. New York uses the exclusive-representative model of collective bargaining, which is essentially universal in the United States. Under that model, employers bargain with an employee organization democratically chosen by the bargaining unit workers to establish unit-wide employment terms.

Plaintiffs-Appellants ("Plaintiffs") are six City University of New York ("CUNY") employees whose bargaining unit is represented by the Professional Staff Congress/CUNY (the "PSC"). Plaintiffs claim that the Taylor Law violates their First Amendment rights against compelled speech and compelled expressive association, even though Plaintiffs need not join or support the PSC. The district court correctly rejected Plaintiffs' claim as foreclosed by controlling Supreme Court precedent. Every court to consider the same claim has reached the same conclusion, including this Court in *Jarvis v. Cuomo*, 660 F. App'x 72, 74 (2d Cir. 2016) (summary order), *cert. denied*, 137 S. Ct. 1204 (2017). The Court need go no further to affirm the judgment below.

Even if Plaintiffs' arguments were not foreclosed by controlling precedent, they would find no support in relevant First Amendment caselaw. The Supreme Court has never validated a claim of compelled speech or compelled expressive

1

association where, as here, the complaining party is not personally required to do *anything* and reasonable outsiders would not believe that the complaining party personally agrees with an organization or its message. *See D'Agostino v. Baker,* 812 F.3d 240, 244-45 (1st Cir.) (Souter, J.) (reviewing cases), *cert. denied*, 579 U.S. 909 (2016). Plaintiffs' accusations of anti-Semitism (which PSC denies) do not change the constitutional analysis. *See, e.g., Rumsfeld v. Forum for Acad. & Institutional Rts.*, *Inc.*, 547 U.S. 47, 70 (2006) (military recruiting did not violate law schools' First Amendment rights against compelled speech or association, "regardless of how repugnant the law school considers the recruiter's message").

## ISSUE PRESENTED

Whether New York may—consistent with the First Amendment—use an exclusive-representative collective bargaining system to set employment terms for public employees, where individual employees need not join or support the democratically chosen union representative.

## STATEMENT OF THE CASE

### 1. The Taylor Law and exclusive representation

New York's Public Employees' Fair Employment Act, N.Y. Civil Service Law §§200-215, is commonly known as the Taylor Law. New York adopted the Taylor Law in 1967, against a backdrop of disruptive labor strikes, to "promote

2

harmonious and cooperative relationships between government and its employees and to protect the public by assuring … the orderly and uninterrupted operations and functions of government." N.Y. Civ. Serv. Law §200; *see generally* Governor's Committee on Public Employee Relations, Final Report (Mar. 31, 1966).[1] The Taylor Law grants public employees the right to unionize and negotiate collectively with their public employers and bans public employee strikes. N.Y. Civ. Serv. Law §§200-204, 210-211.

Under the Taylor Law, the majority of employees in an appropriate bargaining unit may democratically vote to be represented by an employee organization for purposes of collective bargaining. N.Y. Civ. Serv. Law §204. If the employees choose union representation, the democratically chosen union becomes "the exclusive representative, for the purposes of [the Taylor Law], of all the employees in the appropriate negotiating unit," and the public employer is "required to negotiate collectively with such employee organization" about unit-wide employment terms. *Id.* at §204(2).

The Taylor Law guarantees public employees the right to choose whether to become members of a union that represents their bargaining unit. N.Y. Civ. Serv.

---

[1] Available at https://perb.ny.gov/wp-content/uploads/2018/04/1966-Taylor-Committee-Report.pdf.

3

Law §202 ("Public employees shall have the right to … refrain from forming, joining, or participating in, any employee organization…."). The exclusive representative has a duty to fairly represent all bargaining unit employees, regardless of membership status, in negotiating the collective bargaining agreement, but need not represent nonmembers in grievances about evaluations or discipline "where the non-member is permitted to proceed without the employee organization and be represented by his or her own advocate." *Id*. at §209-a(2)(c)(iii). After the Supreme Court's decision in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), public employers cannot require employees who choose not to become union members to provide financial support to the exclusive representative.

The Taylor Law's democratic system of exclusive-representative bargaining follows the model that Congress adopted nearly a century ago for private-sector labor relations. *See* 29 U.S.C. §§158(d), 159 (exclusive representation provisions of National Labor Relations Act, enacted in 1935); 45 U.S.C. §152 Fourth (exclusive representation provisions of Railway Labor Act, as amended in 1934). Congress adopted exclusive representation as the best mechanism for stable labor relations, concluding that, because it is "practically impossible to apply two or more sets of agreements to one unit of workers at the same time, or to apply the

4

terms of one agreement to only a portion of the workers in a single unit, the making of agreements is impracticable in the absence of majority rule." S. Rep. No. 74-573, reprinted in 2 Leg. Hist. of the NLRA 2313 (1935).

The exclusive-representation model is also used by the federal government, and in about 40 other states, the District of Columbia, and Puerto Rico for at least some public employees. *See* Br. for New York et al. as Amici Curiae Supporting Respondents, *Harris v. Quinn*, 573 U.S. 616 (2014) (No. 11-681), 2013 WL 6907713, at *8 n.3 & Appendix (filed Dec. 30, 2013) (collecting statutory authorizations of exclusive representation). Collective bargaining agreements with exclusive representatives presently cover about 7.8 million federal, state, and local public employees. News Release, Bureau of Labor Statistics, U.S. Dep't of Labor, Union Members—2022 (Jan. 19, 2023), Table 3 (union affiliation 2022), at https://www.bls.gov/news.release/pdf/union2.pdf.

### 2. Plaintiffs' complaint

PSC is the collective bargaining representative for a bargaining unit of about 30,000 CUNY instructional staff. A.23 (Compl. ¶16). Plaintiffs are six bargaining unit employees who are former PSC members. A.22-23 (Compl. ¶¶10-15). Plaintiffs filed this action on January 12, 2022 against PSC, CUNY, three New

York Public Employee Relations Board members, the City of New York, and the New York State Comptroller. A.19.

Plaintiffs allege that they oppose representation by PSC because Plaintiffs—five of whom are Jewish—believe that PSC "advocate[s] positions and take[s] actions that Plaintiffs believe to be anti-Semitic." A.20 (Compl. ¶3). In support of this allegation, Plaintiffs point to the adoption of a June 2021 "Resolution in Support of the Palestinian People." A.20, 29 (Compl. ¶¶3, 34); A. 263-64 (copy of resolution). Plaintiffs also disagree with other political activities by PSC. A.30 (Compl. ¶45). Plaintiffs also "believe that PSC prioritizes the economic and employment interests of part-time adjunct professors and other groups in the bargaining unit over their interests as full-time faculty and/or staff of CUNY." A.30 (Compl. ¶46). Plaintiffs also complain that, under a 2018 amendment to the Taylor Law, PSC is not legally required to represent them in grievances about evaluation or discipline if they can choose their own advocates. A.32-33 (Compl. ¶¶54-56).

Plaintiffs' Complaint alleges three 42 U.S.C. §1983 claims. Count One alleges that PSC's status as exclusive representative violates Plaintiffs' First Amendment rights by compelling them to associate with PSC and its speech. A.36-38 (Compl. ¶¶82-97). Count Two alleges that Plaintiffs' inclusion in the

6

instructional staff bargaining unit violates their First Amendment rights by compelling them to associate with other employees in the bargaining unit. A.38-40 (Compl. ¶¶98-107). Count Three, which is not at issue here, alleges that three plaintiffs erroneously had union dues deducted after their resignations from PSC membership. A.40-42 (Compl. ¶¶108-118).

### 3. The district court's ruling

The district court granted Fed. R. Civ. P. 12(b)(6) motions filed by PSC, CUNY, and the individual defendants to dismiss Counts One and Two of the Complaint. A.353-82. The City was not a named defendant as to Counts One and Two. A.354 n.1.

The district court concluded that Plaintiffs' First Amendment challenge to exclusive representation—whether "viewed as challenging their compelled association with the PSC (Count One) or with the bargaining unit's other members (Count Two)"—is foreclosed by the Supreme Court's summary affirmance and plenary decision in the *Knight* litigation because "[t]he facts here are on all fours with those in *Knight*—indeed, strikingly so." A.360-66, 370 (citing *Knight v. Minn. Cmty. Coll. Faculty Ass'n*, 460 U.S. 1048 (1983) (summary disposition) and *Minnesota Board for Community Colleges v. Knight*, 465 U.S. 271 (1984) ("*Knight*")). The district court rejected Plaintiffs' argument that the Supreme

7

Court's "2018 decision in *Janus* repudiates, at least implicitly, the holding in *Knight*." A.367-70.

The district court also concluded that the 2018 amendment to the Taylor Law's duty of fair representation did not "give[] rise to a facial First Amendment violation." A.377. The district court interpreted the Taylor Law amendment to mean that an exclusive representative can decline to represent nonmembers only in certain individualized proceedings in which nonmembers are free to choose their own advocates. A.380. The district court reasoned that this limitation on the duty of fair representation "is, on its face, in accord with *Janus*" and "[t]here is no basis to hold that it breaches the First Amendment rights of the non-members." A.380.

Accordingly, the district court held that "Plaintiffs' First Amendment challenges to their representation by the PSC and inclusion in the bargaining unit alongside members of the PSC, as brought in Counts One and Two, … fail to state a claim" and "[t]hese Counts must be dismissed." A.380. After Count Three (which alleged errors in cancelling dues deductions) was resolved in part by the City's offer of judgment and in part by Plaintiffs' voluntary dismissal, the district court entered a final judgment disposing of the entire action. A.389-90. Plaintiffs filed a notice of appeal limited to Counts One and Two. A.391.

8

## SUMMARY OF ARGUMENT

As the district court correctly recognized, Plaintiffs' First Amendment challenge to New York's Taylor law is foreclosed by controlling precedent. In *Minnesota Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), the Supreme Court rejected a First Amendment challenge to an indistinguishable exclusive-representative collective bargaining system. The Supreme Court held that the union's status as exclusive bargaining representative for a unit of community college instructors "in no way restrained [the instructors'] freedom to speak ... or their freedom to associate or not to associate with whom they please, including the exclusive representative." *Id.* at 288.

The Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), did not overrule *Knight.* The Court held only that public employers cannot require nonmembers to pay fair-share fees to the exclusive representative; otherwise, the States can "keep their labor-relations systems exactly as they are," including by "requir[ing] that a union serve as exclusive bargaining agent for [public] employees." *Janus*, 138 S. Ct. at 2478, 2485 n.27.

New York's 2018 amendment to the Taylor Law duty of fair representation is consistent with *Janus* and the First Amendment. The amendment permits an

9

exclusive representative to decline representation of nonmembers only in circumstances in which "the non-member is permitted to proceed without the employee organization and be represented by his or her own advocate." N.Y. Civil Serv. Law §209-a(2)(c). *Janus* endorsed such a limitation on the duty of fair representation.

Even if *Knight* were not dispositive, Plaintiffs' First Amendment arguments would find no support in Supreme Court precedent. The Supreme Court has never validated a claim of compelled speech or compelled expressive association where, as here, the complaining party is not personally required to do anything and there is no public perception that the complaining party agrees with any organization or message. Plaintiffs' arguments ignore the role that public perception plays in delimiting claims of compelled speech and expressive association. Under the Taylor Law, the exclusive representative serves a unit defined for purposes of collective bargaining. Reasonable outsiders understand that—as in any democratic system—individual employees in the unit may not personally agree with the views of the union or those of other unit workers.

Even if *Knight* were not dispositive, and even if New York's exclusive-representative bargaining system were treated as an infringement of First Amendment rights, Plaintiffs' claim still would be meritless because exclusive-

10

representation bargaining would satisfy heightened scrutiny. Governments have a compelling interest in labor peace with their public employees, and there is a broad consensus, based on long experience, that a democratic, excusive-representative model of collective bargaining provides the practical means of promoting labor peace. That is why the exclusive-representative model of collective bargaining is essentially universal in the United States in both the private and public sectors.

## ARGUMENT

### I. Controlling precedent forecloses Plaintiffs' First Amendment challenge to New York's system of exclusive-representative collective bargaining.

Plaintiffs' central claim is that Taylor Law exclusive-representative collective bargaining unconstitutionally compels speech and expressive association in violation of the First Amendment. The district court correctly concluded that *Knight* forecloses that claim as a matter of precedent. A.360-77. This Court reached the same conclusion in *Jarvis,* 660 F. App'x at 74 ("The argument is foreclosed by [*Knight*].").

The eight other circuits to consider the same arguments that Plaintiffs raise here also have unanimously rejected First Amendment challenges to exclusive-representative bargaining. *Peltz-Steele v. UMass Fac. Fed'n*, 60 F.4th 1, 4-8 (1st Cir.), *cert. denied sub nom. Peltz-Steele v. Umass Fac. Fed.*, 2023 WL 3937635 (U.S. June 12, 2023); *Reisman v. Associated Facs. of Univ. of Maine*, 939 F.3d

11

409, 411-14 (1st Cir. 2019), *cert. denied*, 141 S. Ct. 445 (2020); *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir.), *cert. denied*, 579 U.S. 909 (2016); *Adams v. Teamsters Union Loc. 429*, 2022 WL 186045 at *2-3 (3d Cir. Jan. 20, 2022), *cert. denied*, 143 S. Ct. 88 (2022); *Oliver v. SEIU Local 668*, 830 F. App'x 76, 80-81 (3d. Cir. 2020); *Akers v. Md. State Educ. Ass'n*, 990 F.3d 375, 382 n.3 (4th Cir. 2021); *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809, 813-15 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2721 (2021); *Bennett v. AFSCME Council 31*, 991 F.3d 724, 733-35 (7th Cir.), *cert. denied*, 142 S. Ct. 424 (2021); *Hill v. Serv. Emps. Int'l Union*, 850 F.3d 861, 863-66 (7th Cir.), *cert. denied*, 138 S.Ct. 446 (2017); *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018), *cert. denied sub nom. Bierman v. Walz*, 139 S. Ct. 2043 (2019); *Mentele v. Inslee*, 916 F.3d 783, 786-91 (9th Cir.), *cert. denied sub nom. Miller v. Inslee*, 140 S. Ct. 114 (2019); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 968-70 (10th Cir.), *cert. denied*, 142 S. Ct. 423 (2021); *see also Branch v. Commonwealth Emp. Rels. Bd.*, 120 N.E.3d 1163, 1171-76 (Mass. 2019), *cert. denied sub nom. Branch v. Mass. Dep't of Lab. Rels.*, 140 S. Ct. 858 (2020).

Plaintiffs concede that unanimous judicial authority is against them. AOB 27-29. They ask the Court to "break ranks" and strike down the Taylor Law. AOB 2. There is no basis for doing so because the unanimous authority is correct.

**A.** ***Knight* holds that exclusive-representative collective bargaining does not unconstitutionally compel speech or expressive association.**

**1.** In *Knight*, college instructors who had opted not to join the majority-elected union argued that Minnesota's exclusive-representative collective bargaining system violated their First Amendment speech and association rights. 465 U.S. at 273, 278-79. The Minnesota law granted a bargaining unit's elected representative the exclusive rights both to "meet and negotiate" with the public employer over employment terms and to "meet and confer" with campus administrators about employment-related policy matters outside the scope of mandatory negotiations. *Id.* at 274-75. The designated representative's views were treated as the "official collective position" of faculty within the bargaining unit. *Id.* at 273, 276.

The district court rejected the *Knight* plaintiffs' First Amendment challenge to the union's status as exclusive representative in the "meet and negotiate" process, and the Supreme Court summarily affirmed that decision. *Knight v. Minn. Cmty. Coll. Faculty Ass'n*, 571 F.Supp. 1, 5-7 (D. Minn. 1982), *aff'd mem.*, 460 U.S. 1048 (1983). The *Knight* summary affirmance remains binding precedent. *See Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975). At the same time, however, the district court held that Minnesota's use of exclusive representation for purposes of

13

the "meet and confer" process violated the First Amendment. *Knight*, 465 U.S. at 291-92. The Supreme Court reversed that holding on plenary review. *Id.*

The Supreme Court began its analysis by recognizing that government officials have no obligation to negotiate or confer with faculty members, and that the meet-and-confer process (like the meet-and-negotiate process) is not a "forum" to which the plaintiffs had any First Amendment right of access. *Id.* at 280-83. The Court explained that the instructors also had no constitutional right "as members of the public, as government employees, or as instructors in an institution of higher education" to "force the government to listen to their views." *Id.* at 283. The government was therefore "free to consult or not to consult whomever it pleases." *Id.* at 285.

The *Knight* Court then considered whether Minnesota's exclusive bargaining law violated those First Amendment rights that nonunion instructors *could* properly assert—namely, the right to speak and the right to "associate or not to associate." 465 U.S. at 288. The Court concluded that Minnesota's law "in no way restrained [instructors'] freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, *including the exclusive representative*." *Id.* (emphasis added)*; see also id.* at 290 n.12 (finding that nonmembers' "speech and associational freedom have been *wholly*

14

*unimpaired*") (emphasis added); *id.* at 291 (stating that instructors were "[u]nable to demonstrate an infringement of *any First Amendment right*") (emphasis added).

New York's system of exclusive-representative collective bargaining is indistinguishable from the Minnesota system upheld in *Knight*.[2] Accordingly, as the district court recognized below, *Knight*'s holding that such a system in no way restrains non-union members' right to speak or "to associate or not to associate," *id.* at 288, necessarily forecloses Plaintiffs' theory that PSC status as their bargaining unit's exclusive representative unconstitutionally compels them to speak or to enter an expressive association with PSC or other bargaining unit workers. Plaintiffs concede that this Court already reached the same conclusion in *Jarvis*. AOB 28.

**2.** Plaintiffs insist that *Knight* considered only whether the Minnesota instructors had a right to force the government to meet with them. AOB 25-26. To the contrary, after holding in Part II. A. of the *Knight* decision that the instructors had no such First Amendment right, *Knight,* 465 U.S. at 280-88, the Court went on to hold in Part II. B. that the use of an exclusive-representative system did not violate any First Amendment rights the instructors do have, *i.e.*, the freedom to

---

[2] Plaintiffs' arguments about the Taylor Law duty of fair representation are addressed *infra* at 20-26.

speak and the "freedom to associate or not to associate." *Id.* at 288-90. Thus, Plaintiffs' narrow "reading of *Knight* … is simply at odds with what it says … [T]he Court also considered whether the law violated the teachers' First Amendment freedoms of speech or association. It held that it did not." *Adams*, 2022 WL 186045, at *2.

With regard to expressive association, the Supreme Court held that the dissenting instructors' "associational freedom has not been impaired," because they are "free to form whatever advocacy groups they like" and are "not required to become members" of the organization acting as the exclusive representative. *Knight,* 465 U.S. at 289. The Court explained that whether individual bargaining unit members' First Amendment rights not to associate were impaired turned not upon the union's mere status as representative of all bargaining unit employees, but upon whether bargaining-unit members were required to support or join the union. *Id.* at 289-90 (finding no associational impairment because any pressure instructors felt to join the majority union was only the pressure "inherent in our system of [democratic] government"); *id.* at 289 n.11, 291 n.13 (explaining that no requirement of financial support was at issue). Because neither membership nor financial support were required, instructors retained the "freedom … not to associate with whom they please, *including the exclusive representative*." *Id.* at

16

288 (emphasis added). As Justice Souter explained in a decision for the First Circuit, *Knight* holds that "exclusive bargaining representation by a democratically selected union does not, without more, violate the right of free association on the part of dissenting non-union members." *D'Agostino,* 812 F.3d at 244.

Likewise, *Knight*'s broad reasoning forecloses Plaintiffs' compelled speech challenge to exclusive representation. *See Reisman*, 939 F.3d at 414 (*Knight* "disposed" of plaintiff's' "apparent compelled speech claim" because "'when an exclusive bargaining agent is selected by majority choice, it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority'") (quoting *D'Agostino*, 812 F.3d at 244); *D'Agostino*, 812 F.3d at 244 (under *Knight*, exclusive representation does not "support any claim of compelled speech" because "the freedom of the dissenting appellants to speak out publicly on any union position ... counters the claim that there is an unacceptable risk the union speech will be attributed to them contrary to their own views; they may choose to be heard distinctly as dissenters if they so wish, and ... the higher volume of the union's speech has been held to have no constitutional significance.").

**3.** Plaintiffs assert that *Knight* does not foreclose their argument that an exclusive-representation system unconstitutionally compels them into an

17

expressive association with other bargaining unit workers (as opposed to with

PSC). AOB 27. But Plaintiffs do not identify any way in which they are compelled

to associate with other bargaining unit workers—aside from Plaintiffs' contention

that exclusive-representative bargaining itself unconstitutionally compels

expressive association. As such, *Knight* does foreclose that argument. *See Knight*,

465 U.S. at 288 (holding that, notwithstanding the exclusive-representation system,

the instructors were free "to associate or not to associate *with whom they please*")

(emphasis added); A.372-75 (explaining why the argument is foreclosed).

The government's authority to use an exclusive-representative collective

bargaining system to set employment terms necessarily includes the authority to

define bargaining units. Bargaining unit definitions in New York consider whether

employees have a "community of interest." N.Y. Civ. Serv. Law §207(1)(a). New

York law provides procedures for determining the proper scope of a bargaining

unit. *Id.* §§206-207. If Plaintiffs believe they should not be included in "the same

bargaining unit with CUNY instructional staff, such as part-time adjuncts, whose

employment interests diverge from their own," A.39 (Compl. ¶104), that is a

Taylor Law issue—not a viable First Amendment compelled association claim.

Regardless of how bargaining units are defined, "[t]he complete satisfaction of all

who are represented is hardly to be expected." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953).

**B.** *Janus* **maintained the constitutionality of exclusive-representative collective bargaining.**

Contrary to Plaintiffs' contention (AOB 32-34), the Supreme Court's decision in *Janus* provides no support for their position that the constitutionality of exclusive-representative bargaining now is an open question. *Janus* held only that public employers may no longer require nonmembers to pay fair-share fees to an exclusive representative. 138 S. Ct. at 2486. *Janus* distinguished exclusive representation from the requirement of providing financial support and stated that exclusive representation remains constitutionally permissible: "It is ... not disputed that the State may require that a union serve as exclusive bargaining agent for its employees…. We simply draw the line at allowing the government to ... require all employees to support the union [financially]." *Id.* at 2478*; see also id.* at 2485 n.27 ("States can keep their labor-relation systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions."). The Supreme Court emphasized that it was "not in any way questioning the foundations of modern labor law." *Id.* at 2471 n.7. No principle is more central to the foundations of modern labor law than exclusive representation.

19

Plaintiffs point to a passage in *Janus* that describes exclusive-representative bargaining as "a significant impingement on associational freedoms that would not be tolerated in other contexts." AOB 32 (quoting *Janus*, 138 S. Ct. at 2478). That passage, however, is taken from a paragraph in which the majority reasoned that exclusive representation in public employment (unlike compulsory financial support) is constitutional under the line of cases pertaining to the government's authority as an employer. *See Janus*, 138 S. Ct. at 2477-78 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 564-66 (1968)). The reference to "other contexts" serves only to make clear that exclusive representation is *permitted* in the context of public employee collective bargaining. *See Peltz-Steele,* 60 F.4th at 6-8 (explaining why Plaintiffs' proposed reading of the *Janus* decision is misguided). Thus, "every Court of Appeals to have addressed the issue post-*Janus*" has concluded that exclusive-representative bargaining is consistent with the First Amendment. *Peltz-Steele,* 60 F.4th at 8; *see also supra* at 11-12 (collecting cases).

### C. The Taylor Law's duty of fair representation is consistent with *Janus* and the First Amendment.

Plaintiffs contend that, even if exclusive-representation bargaining is constitutional in general, a 2018 amendment to the Taylor Law duty of fair representation is not consistent with the First Amendment. AOB 22-24. The district court correctly rejected that contention because, even after the 2018 amendment,

20

the Taylor Law imposes a duty of fair representation that is co-extensive with Taylor Law exclusive representation. *See* A.377-81.

1. The core of exclusive representation is that "individual employees may not be represented by any agent other than the designated union." *Janus*, 138 S. Ct. at 2460. When an employee is barred from being represented by another agent, this restriction brings with it the duty of fair representation as a "necessary concomitant." *Id.* at 2469.[3] The Supreme Court has stated that, if exclusive representation of an individual for purposes of collective bargaining were not paired with the union's duty to fairly represent that individual in collective bargaining, "serious 'constitutional questions [would] arise.'" *Id.* (quoting *Steele*, 323 U.S. at 198; brackets in *Janus*); *see also Steele*, 323 U.S. at 198-99, 201 ("constitutional questions" would arise unless an exclusive representative has a "duty to represent non-union members" that extends "at least to the extent of not discriminating against them as such in the contracts which it makes as their

---

[3] *See Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 376 n.22 (1984) ("A union's statutory duty of fair representation ... is coextensive with its statutory authority to act as the exclusive representative for all the employees within the unit."); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 202 (1944) ("It is a principle of general application that the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf[.]").

representative" because otherwise "the minority would be left with no means of protecting their interests.").

There is no logical reason, however, why a union's duty of fair representation must extend *beyond* its role as exclusive representative to situations in which employees can choose to be represented by other advocates. Indeed, in *Janus*, the Supreme Court based its decision to ban fair-share fees, in part, on its conclusion that concerns about nonmember freeriding can adequately be addressed by allowing unions to decline to represent nonmembers during disciplinary grievances. *Janus*, 138 S.Ct. at 2468-69. The Supreme Court recognized that "representation of nonmembers in disciplinary matters" imposes a "burden" on an exclusive representative, because nonmembers do not pay union dues. *Id.* at 2468. The Court held that the First Amendment does not allow public employers to alleviate this burden by requiring nonmembers to pay fair-share fees for grievance representation because it would be "significantly less restrictive of associational freedoms … [for] [i]ndividual nonmembers [to] be required to pay for that service or [to] be denied union representation altogether." *Id.* at 2468-69 (internal quotations omitted).[4]

---

[4] At the Supreme Court oral argument in *Janus*, Justice Alito asked petitioner's counsel (who also represents Plaintiffs here) whether "there [is] a

**2.** The 2018 Taylor Law amendment is entirely consistent with *Janus* and the First Amendment. The New York Legislature amended the Taylor Law to provide that the duty of fair representation to nonmembers "shall be limited to the negotiation or enforcement of the terms of an agreement with the public employer." N.Y. Civ. Serv. Law §209-a(2)(c). The Legislature went on to further explain how this modification interacts with bargaining representatives' exclusive representation rights:

> No provision of this article shall be construed to require an employee organization to provide representation to a non-member (i) during questioning by the employer, (ii) in statutory or administrative proceedings or to enforce statutory or regulatory rights, or (iii) in any stage of a grievance, arbitration or other contractual process concerning the evaluation or discipline of a public employee *where the non-member is permitted to proceed without the employee organization and be represented by his or her own advocate*.

*Id.* §209-a(2)(c) (emphasis added).

The district court interpreted this statutory language to mean that the final clause modifies "all of §209-a.2's subsections," so the only circumstances in which the exclusive representative can decline representation are for specified

---

constitutional requirement for a union to handle the grievances of nonmembers." Petitioners' counsel responded that the constitution does not impose such a requirement. Tr. of Oral Argument, No. 16-1466 (Feb. 26, 2018), at 11-12, at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2017/16-1466_bocf.pdf.

individualized proceedings in which the nonmember can "proceed without the employee organization and be represented by his or her own advocate." A.379-80. As the district court recognized, that interpretation is supported by the "cannon of constitutional avoidance." *Id.* It is also consistent with the formatting of the provision in the bill passed by the New York Legislature, in which the provision appears as a single block of text.[5] Plaintiffs do not take issue with the district court's statutory interpretation in their Opening Brief, so any argument to the contrary has been waived. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir.2005).

Plaintiffs also conceded in the district court that they were raising only a facial challenge to the 2018 Taylor Law amendments. A.327; A.377 n.12. They did not allege any facts to show that PSC actually has declined or would decline in the future to represent them in any situation in which they cannot adequately protect their own interests.

That being so, the district court was correct in rejecting Plaintiffs' facial challenge to the 2018 Taylor Law amendments. Plaintiffs assert that *Janus* requires

---

[5] *See* 2018 N.Y. Sess. Laws, c. 59, Part RRR § 4; *see also A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 87 N.Y. 2d 574, 580 (1996) ("Where … a descriptive or qualifying phrase follows a list of possible antecedents, the qualifying phrase generally refers to and modifies all of the preceding clauses.") (citing *Budd v. Valentine*, 283 N.Y. 508, 511 (1940)).

a "full duty" of fair representation (AOB 22), but *Janus* recognized that the duty of fair representation need *not* extend to individual grievances. *See supra* at 22. Moreover, the Taylor Law imposes a "full duty" of fair representation because the duty is co-extensive with a union's exclusive role. *See* Catherine L. Fisk & Martin H. Malin, *After Janus,* 107 Cal. L. Rev. 1821, 1846 1839-40 (2019) (discussing New York's 2018 Taylor Law amendment as an example of "the approach that *Janus* suggested" for minimizing the burden of freeriding).

Plaintiffs point out that federal labor laws have been interpreted to impose a duty of fair representation that extends to disciplinary grievances. AOB 23 (citing cases). But that is just a statutory choice, not a constitutional command. Other states besides New York have statutorily limited the scope of exclusive representation and duty of fair representation.[6] Plaintiffs do not offer any cogent First Amendment argument for why New York may not do so as well.

---

[6] For example, Florida has provided since 1977 that "certified employee organizations shall not be required to process grievances for employees who are not members of the organization." Fla. Stat. §447.401. In Nebraska, public sector employees who are non-union members must reimburse unions if they choose to be represented by the union in grievances or legal action. Neb. Rev. Stat. §48-838(4). In Rhode Island, unions can refuse to handle grievances for police officers and firefighters who have not maintained their membership for at least 90 days prior to the events leading up to the grievance. R.I. Gen. Laws §§28-9.1.-(18)(a); 28-9.2.-(18)(a).

**3.** Finally, if there were a constitutional flaw in the 2018 Taylor Law amendment, the remedy would be to invalidate and sever the 2018 amendment—not to cause labor relations chaos by invalidating the Taylor Law itself. When a provision added to a longstanding statute is found to be unlawful, it is assumed that because "the statute was enacted and enforced for some time without the … provision[], … the legislature would have preferred a mere pruning of the offending … provision[] to a rooting out of the entire statute." *General Elec. Co. v. New York State Dept. of Labor*, 936 F.2d 1448, 1461 (2d Cir. 1991); *see also CWM Chemical Servs., LLC v. Roth*, 6 N.Y. 3d 410, 423 (2006). Plaintiffs do not seek such relief. AOB 10 n.3.

## II. Even if not foreclosed by precedent, Plaintiffs' arguments lack support in caselaw about compelled speech and compelled expressive association.

Even if *Knight* were not dispositive of Plaintiffs' compelled speech and compelled expressive association arguments, those arguments would be meritless because they lack any basis in relevant First Amendment precedents. Plaintiffs need not join PSC, financially support PSC, or express or disseminate any unwanted message. They also retain their full First Amendment rights to speak and

26

petition about all issues, whether individually or through groups.[7] PSC's collective bargaining agreement expressly states that the recognition of PSC for purposes of the Taylor Law does not prevent CUNY officials "from meeting with any individual or organization to hear views on any matters." A.54 (¶1.2). Neither CUNY officials nor reasonable outsiders would assume that all CUNY faculty and staff members necessarily agree with PSC's positions—or with each other—about anything. The Supreme Court has never upheld a claim of compelled speech or expressive association where, as here, the complaining party is not personally required to do *anything* and there is no public perception of imputed speech or expressive association. *See D'Agostino*, 812 F.3d at 244–45 (reviewing cases); A.375 n.10 (same).

**1.** Plaintiffs premise their compelled speech and association arguments on PSC's responsibility for representing the entire bargaining unit in negotiations about unit-wide contract terms. They claim that this system inherently forces them

---

[7] *See Lehnert v. Ferris Fac. Ass'n*, 500 U.S. 507, 521 (1991) ("Individual employees are free to petition their neighbors and government in opposition to the union which represents them in the workplace."); *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Employee Relations Comm'n*, 429 U.S. 167, 176 n.10 (1976) ("[N]o one would question the absolute right of the nonunion teachers to … communicate [their] views to the public …. [or] directly to the very decisionmaking body charged by law with making the choices raised by the contract renewal demands.").

to be part of an expressive association, even if they choose not to be PSC members and need not provide financial support to PSC or do anything else. But Plaintiffs ignore the role that public perception plays in delimiting claims of compelled speech and compelled expressive association. In *Rumsfeld*, for example, there was no impingement on the law schools' First Amendment rights because the presence of military recruiters on campus would not lead reasonable people to believe that the "law schools agree[d] with any speech by recruiters." *Rumsfeld,* 547 U.S. at 65, 69. Likewise, in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), Chief Justice Roberts explained that "forced association" arises where outsiders believe that the plaintiffs "endorse[]" or "agree[] with" another party's message. *Id.* at 459-60 (Roberts, C.J., concurring) ("Voter perceptions matter, and if voters do not actually believe the parties and the candidates are tied together, it is hard to see how the parties' associational rights are adversely implicated.").

Reasonable outsiders would not believe that all bargaining unit workers necessarily agree with a democratically chosen union or its speech. An "exclusive representative" in a public employee collective bargaining system does not act as any individual employee's "*personal* representative." *Reisman*, 939 F.3d at 413 (emphasis added). Rather, "a union, once it becomes the exclusive bargaining

28

agent for a bargaining unit, must represent the *unit* as an entity." *Id.* (emphasis in original); *see also Peltz-Steele,* 60 F.4th at 5 (same reasoning); N.Y. Civ. Serv. Law §204(2) (exclusive representative serves as the representative "of all the employees in the appropriate negotiating unit"). While Plaintiffs cite cases analogizing the relationship of the exclusive representative to bargaining unit workers to an agency, fiduciary, or trustee relationship (AOB 4-5), "[n]o matter what adjective is used to characterize it, the relationship is one that is clearly imposed by law, not by any choice on a dissenter's part, and when an exclusive bargaining agent is selected by majority choice, it is readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority." *D'Agostino*, 812 F.3d at 244; *see also Knight*, 465 U.S. at 276 ("The State Board considers the views expressed … to be the faculty's official collective position. It recognizes, however, that not every instructor agrees with the official faculty view[.]"),

Different viewpoints exist within every democratic system, and reasonable people understand that the views of a parent-teacher association, elected representative, or bar association are not necessarily shared by every parent, constituent, or attorney. *See, e.g.*, *Lathrop v. Donohue*, 367 U.S. 820, 859 (1961) (Harlan, J., concurring) ("[E]veryone understands or should understand that the

29

views expressed are those of the State Bar as an entity separate and distinct from each individual.") (quotation omitted); *cf. Board of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 250 (1990) (even high school students understand that school does not endorse speech of school-recognized student groups). The same is true with a democratic system of exclusive-representative bargaining, so there is no compelled speech or expressive association simply because such a system exists.

Likewise, reasonable outsiders would not perceive other bargaining unit members to be speaking for Plaintiffs. In Plaintiffs' words, the instructional staff bargaining unit is made of up "tens of thousands of other CUNY employees, regardless of … whether they have shared … political … interests." A.39 (Compl. ¶100). A reasonable person would not perceive that 30,000 frequently opinionated and vocal college faculty and staff agree with each other about anything—and particularly not about controversial political issues. When reasonable outsiders would not perceive a group's speech as reflecting the views or endorsement of another person, then that person has not been forced into an association with the group in a manner that implicates the First Amendment.

**2.** The First Amendment cases that Plaintiffs rely upon are not on point here because the complaining parties in those cases were required to engage in expressive activity or faced retaliation for not engaging in expressive activity.

30

Plaintiffs cite *Pacific Gas & Electric Company. v. Public Utilities Commission,* 475 U.S. 1 (1986) (plurality opinion), for the proposition that it is not sufficient for purposes of the First Amendment that they can "speak[] against PSC and its positions." AOB 16. In *Pacific Gas*, however, the complaining party was required to disseminate an unwanted message in its billing envelopes, 475 U.S. at 4-7, whereas Plaintiffs are "not … required to carry, endorse, or embrace any message of another—whether the PSC or its members." A.375 n.10.

The district court also correctly distinguished the cases Plaintiffs rely upon about the right of public employees and public contractors not to be discharged for refusing to support a political party or its candidates. A.376; AOB 19 (citing *Elrod v. Burns*, 427 U.S. 347 (1976); *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996)). Unlike the plaintiffs in those cases, Plaintiffs here are not required to do *anything* and do not allege that they face any employment consequences for resigning PSC membership. A.376-77. To the contrary, the Taylor Law protects employees' "right to … refrain from forming, joining, or participating in, any employee organization" and makes it illegal for a public employer or employee organization "to interfere with, restrain or coerce public employees in their exercise of their rights." N.Y. Civ. Serv. Law §§202, 209-a(1)(a) & (2)(a).

31

**3.**  Plaintiffs point out that PSC can "enter[] into binding legal contracts governing their working lives." AOB 15. But that is not a First Amendment issue. Plaintiffs concede that public employees have no First Amendment right to force the government to negotiate contract terms with them individually or through their preferred representative. AOB 27; *see also Smith v. Ark. State Hwy. Emps., Loc. 1315*, 441 U.S. 463, 464-65 (1979) (public employer had no First Amendment obligation to deal with a union, rather than with individual employees). In the absence of a collective bargaining system, the government can—and generally does—set unit-wide contract terms for public employees and offer those terms on a take-it-or-leave-it basis. That the contract terms instead are set through negotiations with the bargaining unit's democratically chosen representative would not lead reasonable outsiders to believe that every bargaining unit worker necessarily supported those contract terms.

The labor law cases Plaintiffs cite about the impact of an exclusive representation system on "individual liberties" (AOB 12) address economic liberties (like freedom of contract), not First Amendment speech and association. *See* AOB 12 (citing *Steele*, 323 U.S. at 202, and *14 Penn Plaza v. Pyett*, 556 U.S. 247, 271 (2009)). Those cases do not support Plaintiffs' arguments here.

32

**4.** Plaintiffs' arguments also find no support in *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279 (11th Cir. 2010) (AOB 18), which did not involve a First Amendment claim. *Mulhall* held only that a private-sector employee who objected to union representation had an "associational interest" sufficient to support standing to allege the violation of a federal statute, not that exclusive-representative bargaining infringes First Amendment rights. *Id*. at 1286-88; *see Hill*, 850 F.3d at 865 n.3 (distinguishing *Mulhall*); *D'Agostino*, 812 F.3d at 244-45 (same).[8]

This Court held in *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1251-52 (2d Cir. 1992), that the certification of a Railway Labor Act exclusive bargaining representative did not violate objecting employees' First Amendment rights even though they were "represented by a group that they do not wish to have represent them." *Id.* at 1252. That holding is inconsistent with Plaintiffs' (mis)reading of *Mulhall.*

**5.** Finally, Plaintiffs' allegations that PSC has an "anti-Semitic agenda" (AOB 8)—which PSC vehemently denies—do not change the constitutional

---

[8] *Mulhall*'s holding on standing was called into question when the Supreme Court, having granted certiorari on the merits of the case, dismissed the writ as improvidently granted. *See UNITE HERE Local 355 v. Mulhall*, 134 S. Ct. 594, 595 (2013) (Breyer, J., dissenting).

analysis. As an initial matter, Plaintiffs do not contend that PSC excludes workers

from membership based on religion or pro-Israel viewpoint or that anything in the

governing collective bargaining agreement makes distinctions on that basis.

Federal, state, and local law make it illegal for labor organizations to discriminate

on the basis of religion or creed, and any such discrimination would be actionable

under those laws. *See, e.g.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§2000e-2(c); New York State Human Rights Law, N.Y. Exec. Law §290 et seq.;

New York City Human Rights Law, 8 N.Y.C. Admin. Code §8-101 et. seq.; *State*

*Comm'n for Hum. Rts. v. Farrell*, 24 A.D.2d 128, 132 (N.Y. App. Div. 1965) ("A

party has the right not to be excluded from the union because of race, creed, color,

or religious persuasion."). PSC also has a duty of fair representation when it acts as

exclusive representative, and that duty precludes discrimination. *See Civ. Serv. Bar*

*Ass'n, Loc. 237, Int'l Bhd. of Teamsters v. City of New York*, 64 N.Y.2d 188, 196

(N.Y. Ct. App. 1984) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)) (duty of

fair representation prohibits "conduct toward a member of the collective

bargaining unit [that] is ... discriminatory").

   Plaintiffs complain that PSC (meaning PSC's Delegate Assembly) approved

a resolution calling for "discussions at the chapter level" to "consider" support for

the Boycott-Divest-Sanction movement. A.263. Although the resolution

34

"condemns racism in all forms, including anti-Semitism," A. 263, Plaintiffs "believe that this Resolution is openly anti-Semitic." A.29 (Compl. ¶35). Plaintiffs are entitled to their beliefs, but those beliefs do not create a First Amendment violation that does not otherwise exist. *See Rumsfeld*, 547 U.S. at 70 ("A military recruiter's mere presence on campus does not violate a law school's right to associate, regardless of how repugnant the law school considers the recruiter's message."). Plaintiffs are also free to express their own messages about PSC, about Israel, and about all other issues. *See, e.g.*, A.375 n.10 (citing Wall Street Journal article by one of the Plaintiffs entitled "I'm Stuck with an Anti-Semitic Labor Union."). Neither CUNY officials nor reasonable outsiders would assume that all CUNY instructional staff agree with a resolution passed by the PSC's Delegate Assembly about a controversial issue.

## III. Exclusive-representative collective bargaining would satisfy heightened scrutiny.

Even if precedent did not foreclose Plaintiffs' claim, and even if New York's exclusive-representation system were treated as a First Amendment impingement that triggers heightened scrutiny, Plaintiffs' claim *still* would be meritless because exclusive representation would survive such scrutiny.

As an initial matter, *Janus* explained that, under the *Pickering* line of cases, the government has greater authority under the First Amendment when it acts as an

35

employer rather than a sovereign. *Janus*, 138 S. Ct. at 2477-78. In that context, the Supreme Court balances the "'interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees.'" *U. S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 564 (1973) (quoting *Pickering*, 391 U.S. at 568). The Court held in *Janus* that it was "draw[ing] the line at" mandatory agency fee requirements; and that, beyond eliminating agency fees, public employers could "keep their labor-relations systems exactly as they are." 138 S. Ct. at 2485 n.27, 2478.

Even if exacting scrutiny applied, that test would be satisfied because exclusive-representative collective bargaining "serve[s] a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Mentele*, 916 F.3d at 790-91 (quoting *Janus*, 138 S. Ct. at 2465); *see also Reisman v. Associated Facs. of Univ. of Maine*, 356 F.Supp.3d 173, 178 (D. Me. 2018) (same conclusion), *aff'd on other grounds*, 939 F.3d 409 (1st Cir. 2019); *Uradnik v. Inter Fac. Org.*, 2018 WL 4654751, at *3 (D. Minn. Sept. 27, 2018) (same conclusion), *aff'd,* 2018 WL 11301550 (8th Cir. Dec. 3, 2018).

Contrary to Plaintiffs' contention (AOB 38), "*Janus* did not revisit the

longstanding conclusion that labor peace is 'a compelling state interest,'" *Mentele*,

916 F.3d at 790 (quoting *Janus*, 138 S. Ct. at 2465), and neither did *Harris v.*

*Quinn*, 573 U.S. 616 (2014). *See Mentele*, 916 F.3d at 787. Nor is there any merit

to Plaintiffs' speculation that New York can achieve labor peace without allowing

collective bargaining. AOB 41. Different jurisdictions have different histories of

labor unrest. In New York, the Conlin-Waldon Act, adopted in 1947, imposed

draconian penalties for public employee strikes without creating a collective

bargaining system. *See* Martin H. Malin, *The Motive Power in Public Sector*

*Collective Bargaining*, 36 Hofstra Lab. & Emp. L.J. 123, 124-25 (2018). The

Conlin-Waldon Act was a complete failure. *See id.* After major, disruptive, illegal

strikes in 1965 and 1966, Governor Rockefeller appointed the Taylor Committee

"to make legislative proposals for protecting the public against the disruption of

vital public services by illegal strikes." *Id.* at 123 n.5; Governor's Committee on

Public Employee Relations, Final Report at 9 (Mar. 31, 1966). Based on New

York's experience with disruptive public employee strikes, the Committee

concluded that a collective bargaining system was necessary to promote labor

peace, and the New York Legislature, in adopting the Taylor Law, found that

requiring public employers to engage in collective bargaining would best assure

37

"orderly and uninterrupted operations and functions of government." N.Y. Civ. Serv. Law §200.

Nor is there any basis for Plaintiffs' assertion that New York can have a successful collective bargaining system that does not follow the model of exclusive representation. AOB 41-42. The consensus of Congress and state legislatures, based on decades of experience, with millions of public and private employees, is that a successful collective bargaining system requires a single, democratically chosen employee representative, with responsibility to negotiate contract terms for the entire bargaining unit. *See supra* at 4-5. In *Janus*, the Supreme Court reasoned that agency fees are not necessary for labor peace because the federal government and about half the States use collective bargaining systems without agency fees. 138 S. Ct. at 2456-58, 2467. There is no similar history of successful collective bargaining systems that do not use exclusive representation. Experiments with alternative collective bargaining systems were abandoned as failures. *See Fisk*, 107 Cal. L. Rev. at 1835.

New York's exclusive-representation system also protects individual employees' freedom of speech and association. Individual employees need not join or support a union or do anything else. Contrary to Plaintiffs' contention, the system does not "surpress[] diverse expression." AOB 39. Individual employees

38

have the same freedom as all members of the public to make their views known, whether individually or through groups of their own choosing. *See supra* at 27 & n.7. Plaintiffs also get matters backwards in asserting that a union should negotiate contract terms only for its members without having a duty to fairly represent all similarly situated employees. AOB 41-42. The exclusive representative's duty to fairly represent the entire unit in collective bargaining *protects* individual public employees' right not to associate with the majority-chosen unit representative. If the representative could, for example, "negotiate particularly high wage increases for its members in exchange for accepting no increases for others," *Lehnert*, 500 U.S. at 556 (Scalia, J., concurring in part and dissenting in part), nonmembers would claim that they are unconstitutionally pressured to join the union.

## CONCLUSION

The judgment below should be affirmed.

Respectfully submitted,

Dated: July 27, 2023    By:    /s/Scott A. Kronland
                                SCOTT A. KRONLAND
                                MATTHEW J. MURRAY
                                Altshuler Berzon LLP

                                HANAN B. KOLKO
                                Cohen, Weiss and Simon LLP

                                *Attorneys for Defendant-Appellee*
                                *Professional Staff Congress/CUNY*

39

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1 because it contains 8,397 words, as determined by the Word Count function of Microsoft Word.  It also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared with Microsoft Word and uses 14-point proportionately spaced Times New Roman font.

Dated: July 27, 2023     By:   /s/Scott A. Kronland
                        SCOTT A. KRONLAND
                        Altshuler Berzon LLP

40

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2023, I electronically filed the foregoing

ANSWERING BRIEF OF DEFENDANT-APPELLEE PROFESSIONAL STAFF

CONGRESS/CUNY with the Clerk of Court for the United States Court of

Appeals for the Second Circuit by using the CM/ECF system.  I certify that all

participants in the case are registered CM/ECF users and that service will be

accomplished by the CM/ECF system.

I further certify that on July 27, 2023, I caused six paper copies of the

foregoing ANSWERING BRIEF OF DEFENDANT-APPELLEE CSEA SEIU

LOCAL 2001 to be delivered by UPS within three days, to the Clerk of Court at

Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New

York 10007.


Dated: July 27, 2023        By:   /s/Scott A. Kronland
                                  SCOTT A. KRONLAND
                                  Altshuler Berzon LLP


41