# 23-384

## United States Court of Appeals
## for the Second Circuit

---

AVRAHAM GOLDSTEIN,

*Plaintiffs-Appellants,*

v.

PROFESSIONAL STAFF CONGRESS/CUNY,

*Defendants-Appellees.*

(Caption continues inside front cover.)

On Appeal from the United States District Court
for the Southern District of New York

---

**BRIEF FOR APPELLEES CITY UNIVERSITY OF NEW YORK,
WIRENIUS, TOWNLEY, ZUMBOLO, AND DINAPOLI**

---

BARBARA D. UNDERWOOD
*Solicitor General*
ESTER MURDUKHAYEVA
*Deputy Solicitor General*
CLELAND B. WELTON, II
*Assistant Solicitor General
of Counsel*

LETITIA JAMES
*Attorney General
State of New York*
Attorney for State Appellees:
28 Liberty Street
New York, New York 10005
(212) 416-6197

Dated: July 28, 2023

*(Caption continues from front cover.)*

MICHAEL GOLDSTEIN, FRIMETTE KASS-SHRAIBMAN, MITCHELL LANGBERT, JEFFREY LAX, MARIA PAGANO,

*Plaintiffs-Appellants*,

v.

CITY UNIVERSITY OF NEW YORK, JOHN WIRENIUS, in his official capacity as Chairperson of the New York Public Employee Relations Board, ROSEMARY A. TOWNLEY, in her official capacity as Member of the New York Public Employee Relations Board, ANTHONY ZUMBOLO, in his official capacity as Member of the New York Public Employee Relations Board, CITY OF NEW YORK, THOMAS P. DINAPOLI, in his official capacity as New York State Comptroller,

*Defendants-Appellees*.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iii

PRELIMINARY STATEMENT ......................................................... 1

ISSUES PRESENTED ........................................................................ 3

STATEMENT OF THE CASE ........................................................... 4

    A.   Legal Background ............................................................... 4

        1.   The Taylor Law's exclusive-representation model .......... 4

        2.   The U.S. Supreme Court's decisions in *Knight* and *Janus* and subsequent legal developments...................... 9

    B.   Factual Background ............................................................ 14

    C.   The District Court's Dismissal of Plaintiffs' First Amendment Claims ........................................................... 17

SUMMARY OF ARGUMENT ....................................................... 21

STANDARD OF REVIEW............................................................... 23

ARGUMENT ..................................................................................... 24

POINT I

THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' FIRST AMENDMENT CHALLENGES TO THE TAYLOR LAW ................................ 25

    A.   *Knight* Forecloses Plaintiffs' First Amendment Claims ........ 25

    B.   The Complaint Fails to Allege a Cognizable Burden on Plaintiffs' First Amendment Rights ...................................... 31

i

**Page**

1. Exclusive representation neither restricts nor compels any expressive activity. .....................................32

2. Exclusive representation in collective bargaining does not burden plaintiffs' associational rights. .............36

3. Inclusion in a bargaining unit does not burden plaintiffs' associational rights. ........................................41

POINT II

EXCLUSIVE REPRESENTATION SATISFIES FIRST AMENDMENT SCRUTINY ...................................................................44

CONCLUSION ......................................................................51

ii

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*14 Penn Plaza LLC v. Pyett*,
556 U.S. 247 (2009) ........................................................................ 9, 29

*Abood v. Detroit Board of Education*,
431 U.S. 209 (1977) ................................................................. 11, 46-47

*Adams v. Teamsters Union Loc. 429*,
No. 20-1824, 2022 WL 186045 (3d Cir. Jan. 20, 2022) ......... 13, 28, 37

*Akers v. Maryland State Educ. Ass'n*,
990 F.3d 375 (4th Cir. 2021) ...................................................... 13, 28

*American Comm'ns Ass'n v. Douds*,
339 U.S. 382 (1950) ............................................................................ 29

*Bennett v. Council 31*,
991 F.3d 724 (7th Cir. 2021) ...................................... 13, 28, 31, 37-38

*Bierman v. Dayton*,
227 F. Supp. 3d 1022 (D. Minn. 2017) ............................................... 39

*Bierman v. Dayton*,
900 F.3d 570 (8th Cir. 2018) ...................................... 13, 28, 31, 37-38

*Bierman v. Walz*,
139 S. Ct. 2043 (2019) ........................................................................ 13

*Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
481 U.S. 537 (1987) ............................................................................ 40

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000) ............................................................................ 37

*Branch v. Commonwealth Emp. Rels. Bd.*,
481 Mass. 810 (2019) ............................................................ 13, 28, 49

iii

**Cases**                                                               **Page(s)**

*Branch v. Massachusetts Dep't of Lab. Relations,*
    140 S. Ct. 858 (2020)...........................................................13

*Brokamp v. James,*
    66 F.4th 374 (2d Cir. 2023)..........................................23, 44

*Burlington N. R.R. v. Brotherhood of Maint. of Way Employees,*
    481 U.S. 429 (1987)...............................................................7

*Burns Jackson Miller Summit & Spitzer v. Lindner,*
    59 N.Y.2d 314 (1983)......................................................5, 50

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry,*
    494 U.S. 558 (1990)............................................................40

*D'Agostino v. Baker,*
    812 F.3d 240 (1st Cir. 2016) .....................................passim

*D'Agostino v. Baker,*
    136 S. Ct. 2473 (2016)........................................................13

*DiMaggio v. Brown,*
    19 N.Y.2d 283 (1967) ...........................................................4

*Elrod v. Burns,*
    427 U.S. 347 (1976)............................................................39

*Emporium Capwell Co. v. Western Addition Cmty. Org.,*
    420 U.S. 50 (1975)................................................................8

*Eureka V LLC v. Town of Ridgefield,*
    535 F. App'x 41 (2d Cir. 2013) ...........................................32

*Giboney v. Empire Storage & Ice Co.,*
    336 U.S. 490 (1949).......................................................30-31

*Hendrickson v. AFSCME Council 18,*
    434 F. Supp. 3d 1014 (D.N.M. 2020) .................................45

iv

## Cases                                                            Page(s)

*Hendrickson v. AFSCME Council 18*,
992 F.3d 950 (10th Cir. 2021)...................................... 13, 28

*Hill v. Service Emps. Int'l Union*,
850 F.3d 861 (7th Cir. 2017).............................. 13, 28, 37-39

*Hill v. Service Emps. Int'l Union*,
138 S. Ct. 446 (2017)......................................................... 13

*International Ass'n of Machinists v. Street*,
367 U.S. 740 (1961)............................................................. 7

*Janus v. AFSCME, Council 31*,
138 S. Ct. 2448 (2018).............................................. passim

*Jarvis v. Cuomo*,
660 F. App'x 72 (2d Cir. 2016) ............................. 12, 27, 38

*Jarvis v. Cuomo*,
137 S. Ct. 1204 (2017)...................................................... 13

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) .............................................. 24

*Knight v. Minnesota Cmty. Coll. Faculty Ass'n*,
571 F. Supp. 1 (D. Minn. 1982)........................................9-10

*Knight v. Minnesota Cmty. Coll. Faculty Ass'n*,
460 U.S. 1048 (1984)......................................................... 10

*Lederman v. New York City Dep't of Parks & Recreation*,
731 F.3d 199 (2d Cir. 2013) .............................................. 45

*Mentele v. Inslee*,
916 F.3d 783 (9th Cir. 2019)...................... 13, 28, 31, 45-49

*Miller v. Inslee*,
140 S. Ct. 114 (2019)......................................................... 13

v

| Cases | Page(s) |
|---|---|

*Minnesota State Board for Community Colleges v. Knight*,
465 U.S. 271 (1984) .................................................................... passim

*Mulhall v. UNITE HERE Local 355*,
618 F.3d 1279 (11th Cir. 2010) .................................................... 38-39

*NLRB v. Allis-Chalmers Mfg. Co.*,
388 U.S. 175 (1967) ........................................................................ 29

*O'Hare Truck Serv., Inc. v. City of Northlake*,
518 U.S. 712 (1996) ........................................................................ 39

*Ocol v. Chicago Teachers Union*,
982 F.3d 529 (7th Cir. 2020) ...................................................... 13, 28

*Ocol v. Chicago Teachers Union*,
142 S. Ct. 423 (2021) ...................................................................... 13

*Oliver v. Service Emps. Int'l Union Local 668*,
830 F. App'x 76 (3d Cir. 2020) ................................................... 13, 28

*Pacific Gas & Electric Co. v. Public Utilities Commission of
California*,
475 U.S. 1 (1986) ....................................................................... 34-35

*Peltz-Steele v. UMass Faculty Fed'n*,
60 F.4th 1 (1st Cir. 2023) .......................................... 13, 28, 31, 34, 39

*Peltz-Steele v. UMass Fac. Fed'n*,
No. 22-1123, 2023 WL 3937635 (U.S. June 12, 2023) ...................... 13

*Reisman v. Associated Facs. of Univ. of Me.*,
356 F. Supp. 3d 173 (D. Me. 2018) ................................................... 45

*Reisman v. Associated Facs. of Univ. of Me.*,
939 F.3d 409 (1st Cir. 2019) ...................................... 13, 28, 34, 39, 43

*Reisman v. Associated Facs. of Univ. of Me.*,
141 S. Ct. 445 (2020) ...................................................................... 13

| Cases | Page(s) |
|---|---|

*Roberts v. United States Jaycees*,
468 U.S. 609 (1984)..............................................................36-37

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
547 U.S. 47 (2006)..............................................34, 40, 43-44

*Rutan v. Republican Party of Ill.*,
497 U.S. 62 (1990)..................................................................39

*Schneider Moving & Storage Co. v. Robbins*,
466 U.S. 364 (1984)..................................................................7

*Shurtleff v. City of Boston*,
142 S. Ct. 1583 (2022)..........................................................34

*Slattery v. Hochul*,
61 F.4th 278 (2d Cir. 2023)..................................37, 39, 41

*Steele v. Louisville & N.R.*,
323 U.S. 192 (1944)..........................................................7, 29

*Sullivan v. University of Washington*,
60 F.4th 574 (9th Cir. 2023)................................................40

*Thompson v. Marietta Educ. Ass'n*,
No. 18-cv-628, 2019 WL 6336825 (S.D. Ohio Nov. 26, 2019)............45

*Thompson v. Marietta Educ. Ass'n*,
972 F.3d 809 (6th Cir. 2020)................................13, 28, 31

*Thompson v. Marietta Educ. Ass'n*,
141 S. Ct. 2721 (2021)..........................................................13

*Tolbert v. Queens Coll.*,
242 F.3d 58 (2d Cir. 2001)..................................................45

*United States v. Montague*,
67 F.4th 520 (2d Cir. 2023)..................................................27

vii

| Cases | Page(s) |
|---|---|

*Uradnik v. Inter Fac. Org.*,
   No. 18-cv-1895, 2018 WL 4654751 (D. Minn. Sept. 27, 2018) ........... 45

*Uradnik v. Inter Fac. Org.*,
   2 F.4th 722 (8th Cir. 2021) .......................................... 13, 28

*Vaca v. Sipes*,
   386 U.S. 171 (1967) ..................................................... 29

*Wallace Corp. v. NLRB*,
   323 U.S. 248 (1944) ..................................................... 39

*West Coast Hotel Co. v. Parrish*,
   300 U.S. 379 (1937) ..................................................... 31

## Laws & Regulations

*Federal*

45 U.S.C. § 152 ............................................................. 7

*New York*

Civil Service Law
   § 200 ..................................................................... 5
   § 202 ........................................................ 5-6, 15, 38
   § 203 ..................................................................... 5
   § 204 ................................................................... 6, 8
   § 205 ..................................................................... 6
   § 207 ..................................................................... 6
   § 209-a ........................................................... 7, 29, 40
   § 210 ..................................................................... 5

Education Law § 6201 et seq.............................................. 14

**Law & Regulations**                                             **Page(s)**

*New York (cont'd)*

4 N.Y.C.R.R.
§ 201.2 ..................................................................... 6
§ 201.3 ..................................................................... 6
§ 201.5 ..................................................................... 6
§ 201.8 ..................................................................... 6

*Other Jurisdictions (alphabetical)*

Alaska Stat. § 23.40.110 ........................................... 8

Cal. Gov't Code § 3515.5 ........................................... 8

Conn. Gen. Stat. § 5-271 ........................................... 8

Del. Code tit. 19, § 1304 ........................................... 8

D.C. Code § 1-617.10 ................................................ 8

Fla. Stat. § 447.307 .................................................. 8

Ga. Code Ann. § 25-5-5 ............................................. 8

Haw. Rev. Stat. § 89-8 .............................................. 8

Idaho Code
§ 33-1273 ................................................................ 8
§ 44-1803 ................................................................ 8

5 Ill. Comp. Stat. § 315/3 .......................................... 8

Ind. Code
§ 20-29-2-9 ............................................................. 8
§ 20-29-5-2 ............................................................. 8

Iowa Code § 20.16 .................................................... 8

Kan. Stat. § 72-2220 ................................................. 8

ix

**Law & Regulations**                                      **Page(s)**

*Other Jurisdictions (alphabetical)*

Ky. Rev. Stat.
  § 67A.6902...............................................................8
  § 345.030.................................................................8

Me. Rev. Stat.
  tit. 26, § 967............................................................8
  tit. 26, § 979-F........................................................8

Md. Code, State Pers. & Pens.
  § 3-301.....................................................................8
  § 3-407.....................................................................8

Mass. Gen. Laws ch. 150E, § 4.................................8

Mich. Comp. Laws
  § 423.26...................................................................8
  § 423.211.................................................................8

Minn. Stat. § 179A.06..............................................8

Mont. Code
  § 39-31-205.............................................................8
  § 39-31-206.............................................................8

Neb. Rev. Stat. § 48-838...........................................8

Nev. Rev. Stat. 288.160............................................8

N.H. Rev. Stat. Ann.
  § 273-A:3.................................................................8
  § 273-A:11...............................................................8

N.J. Stat. § 34:13A-5.3.............................................8

N.M. Stat. § 10-7E-15...............................................8

x

**Law & Regulations** **Page(s)**

*Other Jurisdictions (alphabetical)*

N.D. Cent. Code
  § 15.1-16-11 ................................................................. 8
  § 15.1-16-18 ................................................................. 8

Ohio Rev. Code § 4117.04 ........................................ 8

Okla. Stat. tit. 19, § 901.30-2 ............................... 8

Or. Rev. Stat. § 243.666 .......................................... 8

43 Pa. Stat. § 1101.606 ............................................ 8

P.R. Laws
  tit. 3, § 1451b ............................................................. 8
  tit. 3, § 1451f ............................................................. 8

R.I. Gen. Laws § 36-11-2 ........................................ 8

S.D. Codified Laws § 3-18-3 ................................... 8

Texas Loc. Gov't Code
  § 174.101 ...................................................................... 8
  § 174.102 ...................................................................... 8

Utah Code § 34-20a-4 ............................................... 8

Vt. Stat.
  tit. 3, § 941 ................................................................. 8
  tit. 16 § 1991 .............................................................. 8

Wash. Rev. Code
  § 41.56.080 ................................................................... 8
  § 41.80.080 ................................................................... 8

Wis. Stat. § 111.83 ................................................... 8

Wyo. Stat. § 27-10-103 ............................................. 8

**Miscellaneous Authorities\***                       **Page(s)**

A. Jay Adler, *Why I Resigned from the Professional Staff
   Congress (PSC)-CUNY*, Algemeiner J. (June 24, 2021),
   https://www.algemeiner.com/2021/06/24/why-i-resigned-
   from-the-professional-staff-congress-psc-cuny/ ................................. 16

Avraham Goldstein, *I'm Stuck With an Anti-Semitic Labor
   Union*, Wall St. J. (Jan. 21, 2022),
   https://www.wsj.com/articles/im-stuck-anti-semitic-semitism-
   public-labor-union-intimidation-dues-cuny-city-university-
   new-york-janus-11642714137 ............................................................. 15

Barry Hirsch et al., *Union Membership, Coverage, Density and
   Employment by State: 2022* (2023),
   https://www.unionstats.com/state/htm/state_2022.htm ..................... 5

City University of N.Y., Staff Facts, Headcount Summary as of
   Fall 2022 (2023), https://www.cuny.edu/wp-
   content/uploads/sites/4/media-assets/Fall-2022-Staff-
   Facts.pdf ............................................................................................. 14

City University of N.Y., *Student Data Book* (n.d.),
   https://insights.cuny.edu/t/CUNYGuest/views/StudentDataB
   ook/Enrollment ................................................................................... 14

Clyde W. Summers, *Exclusive Representation: A Comparative
   Inquiry Into A "Unique" American Principle*, 20 Comp. Lab.
   L. & Pol'y J. 47 (1998) ........................................................................ 9

CUNY Alliance for Inclusion, *CUNY Community Statement
   Encouraging Mutual Respect and Engagement Towards a
   Just Middle East Peace and a CUNY Free of Harassment*
   (n.d.), https://cunystatement.com/ ..................................................... 16

CUNY Alliance for Inclusion,
   https://www.cunyallianceforinclusion.org/ (n.d.) .............................. 16

\*All websites last visited July 28, 2023.

**Miscellaneous Authorities**                               **Page(s)**

David Brodsky, *At CUNY, My Union Condemns Israel for Human Rights Abuses, but Cheers on China*, Haaretz (July 22, 2021), https://www.haaretz.com/us-news/2021-07-22/ty-article-opinion/.premium/my-cuny-union-condemns-israel-but-cheers-on-china/0000017f-e50c-d568-ad7f-f76f88f50000 ........... 16

David Israel, *Dozens Quit CUNY Faculty Union over Anti-Semitic, Anti-Israel Resolution*, JewishPress.com (July 22, 2021), https://www.jewishpress.com/news/israel/dozens-quit-cuny-faculty-union-over-anti-semitic-anti-israel-resolution/2021/07/22/ ....................................................... 16

Governor's Comm. on Pub. Emp. Relations, *Final Report* (Mar. 31, 1966), https://www.perb.ny.gov/wp-content/uploads/2018/04/1966PERR.pdf .............................................. 5

*In re Board of Higher Ed. of City of N.Y.*, Nos. C-0728, C-0808 (N.Y. PERB June 16, 1972), https://cdha.cuny.edu/files/original/79bb5b29b4c1609b3f02e3224964d62e.pdf ................................................................ 14

KC Johnson, *How CUNY's Faculty Union Bet on Israel Hatred, and Lost*, Tablet (Aug. 12, 2021), https://www.tabletmag.com/sections/news/articles/cuny-kc-johnson .............................................................................. 16

KC Johnson, *An Opening for Dissenters*, City J. (June 22, 2021), https://www.city-journal.org/an-opening-for-dissenters ................... 16

Leah Garrett, *I Resigned from the CUNY Union Because of Its Antisemitism*, Forward (July 14, 2021), https://forward.com/scribe/472961/i-resigned-from-the-cuny-union-because-of-its-antisemitism/ ..................................................... 16

Mario Caruso, Letter to the Editor, *What's Going On with CUNY's Woke Union*, Wall St. J. (Feb. 8, 2022), https://www.wsj.com/articles/cuny-union-psc-anti-israel-pro-china-woke-ccp-11644273762, ......................................................... 15

**Miscellaneous Authorities**                                    **Page(s)**

*Restatement (Third) of Agency* (2006) (Westlaw)...................................39

Robert Cherry, *CUNY Must Confront Anti-Semitism in Its Midst*, N.Y. Daily News (July 11, 2021),
https://www.nydailynews.com/opinion/ny-oped-cuny-must-confront-anti-semitism-in-its-midst-20210711-qhpslaig55fxdjl3uohemobzoi-story.html ............................................16

Ronald Donovan, *Administering the Taylor Law: Public Employee Relations in New York* (1990) ........................................4, 50

Scott Jaschik, *Division in CUNY Faculty Union*, Inside Higher Ed (July 22, 2021),
https://www.insidehighered.com/news/2021/07/22/cuny-faculty-union-divides-over-israeli-palestinian-conflict ......................16

## PRELIMINARY STATEMENT

Plaintiffs-appellants are six instructors employed by the City University of New York (CUNY).[1] Under New York's Taylor Law, Civ. Serv. Law §§ 200-215, public-sector employees like plaintiffs may be exclusively represented in negotiations over the terms and conditions of their employment by a union, if the employees' bargaining unit (comprising all similarly situated employees) has elected union representation through a democratic process. Plaintiffs here are part of CUNY's "instructional staff" bargaining unit, which has elected to be exclusively represented in collective bargaining by Professional Staff Congress/CUNY (PSC), a voluntary union. Inclusion in the instructional staff bargaining unit does not require an employee to join PSC, but PSC is legally obligated to provide fair representation to the interests of all members of the bargaining unit—union members and nonmembers alike.

While PSC thus represents plaintiffs' interests in collective bargaining over the terms and conditions of their employment, plaintiffs

---

[1] This brief is submitted on behalf of defendants-appellees CUNY, John Wirenius, Rosemary A. Townley, and Anthony Zumbolo (the Chair and two members of the New York Public Employee Relations Board), and New York State Comptroller Thomas P. DiNapoli.

are not members of PSC and are not required to support the union—financially or otherwise. Plaintiffs nevertheless object to their exclusive representation by PSC and their inclusion in their bargaining unit, in part because they disagree with PSC's political advocacy relating to Israel and Palestine. The U.S. District Court for the Southern District of New York (Engelmayer, J.) dismissed plaintiffs' First Amendment challenges to the Taylor Law. This Court should affirm.

As the U.S. Supreme Court held in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), exclusive-representation statutes like the Taylor Law do not burden employees' rights of free expression or expressive association. Being represented by a union in collective bargaining with an employer does not restrain or compel plaintiffs' speech on any issue, nor does it constitute or imply plaintiffs' endorsement of the union's political advocacy. In the absence of any implied endorsement—let alone a restriction on or compulsion of plaintiffs' speech—plaintiffs cannot plausibly establish a violation of their expressive rights. The Supreme Court's decision in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), does not overrule or undermine *Knight*. And every appellate court to have reached the issue—

2

before and after *Janus*—has rejected the contention that exclusive representation violates the First Amendment.

Even if exclusive representation imposed some slight burden on plaintiffs' expressive rights (it does not), the Taylor Law is amply justified by the compelling government interest in securing durable peace with the workforces that protect the public's health, safety, and well-being. Indeed, accepting plaintiffs' position would eviscerate the system of collective bargaining through which governments have long secured those public goods.

## ISSUES PRESENTED

1. Whether the district court correctly dismissed plaintiffs' First Amendment challenges to the Taylor Law's exclusive-representation model of collective bargaining because the challenges are foreclosed by Supreme Court precedent, under which the complaint fails to allege a cognizable burden on plaintiffs' freedom of expression or expressive association.

2. Whether, in the alternative, the judgment of dismissal should be affirmed because the Taylor Law satisfies any applicable standard of First Amendment review.

3

## STATEMENT OF THE CASE

**A.    Legal Background**

**1.    The Taylor Law's exclusive-representation model**

From the 1940s to the 1960s, New York was marked by recurrent public-sector labor unrest. *See* Ronald Donovan, *Administering the Taylor Law: Public Employee Relations in New York* 3-19 (1990). By the 1960s, public-sector labor disputes had become "too numerous to recall or record," and included "strikes by transit workers, firemen, sanitation employees, teachers, ferry workers, . . . social workers, practical nurses, city-employed lifeguards, doctors and public health nurses, etc." *DiMaggio v. Brown*, 19 N.Y.2d 283, 289 (1967). Such strikes threatened catastrophic and irreparable harm to public safety and health, and disproportionately affected those with the greatest need for government services—who are among the most vulnerable members of society.

After a simple prohibition on strikes by public-sector employees failed to resolve the problem, Governor Nelson D. Rockefeller formed the Committee on Public Employee Relations (called the Taylor Committee, after its chairman) with a mandate to investigate New York's public sector and to make legislative proposals for protecting the public against

the disruption of vital public services while also guarding the rights of public employees. *See Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 325-26 (1983); Donovan, *supra*, at 24. The Taylor Committee produced a report,[2] which formed the basis for the Legislature's enactment of the Public Employees' Fair Employment Act (commonly known as the Taylor Law) in 1967.

The Taylor Law, codified at Civil Service Law §§ 200-215, is designed to "promote harmonious and cooperative relationships between the government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government." Civ. Serv. Law § 200. To achieve these aims, the law bars public employees from striking but guarantees their rights to unionize and to bargain collectively. *Id.* §§ 202-204, 210. As of 2022, more than 68% of New York public-sector employees (some 882,000 workers) are covered by a collective-bargaining agreement.[3]

---

[2] Governor's Comm. on Pub. Emp. Relations, *Final Report* (Mar. 31, 1966).

[3] Barry Hirsch et al., *Union Membership, Coverage, Density and Employment by State: 2022* (2023).

The Taylor Law operates on an exclusive-representation model, under which a group of employees designated by the New York Public Employee Relations Board (PERB) as a "bargaining unit" may elect a union with the exclusive authority to represent the bargaining unit in negotiations with the employer. *See* Civ. Serv. Law §§ 204, 205, 207(1). Employees within a bargaining unit that elects exclusive representation are not obligated to join or to support the union in any way. *Id.* § 202. However, a duly elected union exercises exclusive authority to negotiate with the public employer over the terms and conditions of employment for the entire bargaining unit, union members and nonmembers alike. *Id.* § 204(2). A public employee (or group of employees) dissatisfied with a union's representation of his or her bargaining unit may petition to revoke the union's certification as exclusive representative. 4 N.Y.C.R.R. § 201.2. If a petition for decertification has sufficient support among the members of the bargaining unit, the question is put to a majority vote. *See id.* §§ 201.2, 201.3(c)-(d), 201.5(b), 201.8.

A union's exclusive negotiating authority carries with it a legal duty to fairly represent all employees in the bargaining unit in contract negotiations, meaning (for example) that the union cannot discriminate

in favor of its members or against nonmembers. *See* Civ. Serv. Law § 209-a(2); *Janus*, 138 S. Ct. at 2469; *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 376 n.22 (1984); *Steele v. Louisville & N.R.*, 323 U.S. 192, 202 (1944). A union's duty to fairly represent nonmembers is expressly "limited to the negotiation or enforcement of the terms of an agreement with the public employer." Civ. Serv. Law § 209-a(2)(c). In contexts outside the scope of the union's exclusive representation—such as grievance proceedings concerning the rights of an individual nonmember—the union does not serve as the nonmember's exclusive representative and thus is not obligated to provide him or her with representation. *Id.* Instead, a nonunion employee involved in such individualized proceedings is free to retain his own representative to look after his own individual interests. *See id.*

The exclusive-representation model has been a vital component of American labor law for nearly a century. *See* 45 U.S.C. § 152; *Burlington N. R.R. v. Brotherhood of Maint. of Way Employees*, 481 U.S. 429, 444 (1987); *International Ass'n of Machinists v. Street*, 367 U.S. 740, 750-60 (1961). The federal government and at least 38 States, the District of Columbia, and Puerto Rico currently allow for exclusive union

7

representation of public-employee bargaining units.[4] As the Supreme Court has explained, exclusive representation allows all members of a bargaining unit to "secure . . . the benefits of their collective strength and bargaining power." *Emporium Capwell Co. v. Western Addition Cmty. Org.*, 420 U.S. 50, 62 (1975). Exclusive representation also serves the public interest, by allowing government employers to bargain in a single collective negotiation with a counterparty that can effectively organize and channel the concerns and priorities of an entire group of similarly situated employees. Accordingly, exclusive representation is described as

---

[4] *See* Alaska Stat. § 23.40.110(b); Cal. Gov't Code § 3515.5; Conn. Gen. Stat. § 5-271(b); Del. Code tit. 19, § 1304(a); D.C. Code § 1-617.10(a); Fla. Stat. § 447.307(1)(a); Ga. Code Ann. § 25-5-5; Haw. Rev. Stat. § 89-8(a); Idaho Code §§ 33-1273, 44-1803; 5 Ill. Comp. Stat. § 315/3(f); Ind. Code §§ 20-29-5-2(a), 20-29-2-9; Iowa Code § 20.16; Kan. Stat. § 72-2220(a); Ky. Rev. Stat. §§ 67A.6902(2), 345.030(2); Me. Rev. Stat. tit. 26, §§ 967(1-A), 979-F(2)(B); Md. Code, State Pers. & Pens., §§ 3-301(b), 3-407(1); Mass. Gen. Laws ch. 150E, § 4; Mich. Comp. Laws §§ 423.26, 423.211; Minn. Stat. § 179A.06(2); Mont. Code §§ 39-31-205, 39-31-206; Neb. Rev. Stat. § 48-838(4); Nev. Rev. Stat. 288.160(2); N.H. Rev. Stat. Ann. §§ 273-A:3(I), 273-A:11; N.J. Stat. § 34:13A-5.3; N.M. Stat. § 10-7E-15(A); N.Y. Civ. Serv. Law § 204(2); N.D. Cent. Code §§ 15.1-16-11(1)(f), 15.1-16-18; Ohio Rev. Code § 4117.04(A); Okla. Stat. tit. 19, § 901.30-2(E); Or. Rev. Stat. § 243.666(1); 43 Pa. Stat. § 1101.606; P.R. Laws tit. 3, §§ 1451b, 1451f; R.I. Gen. Laws § 36-11-2(d); S.D. Codified Laws § 3-18-3; Texas Loc. Gov't Code §§ 174.101, 174.102; Utah Code § 34-20a-4; Vt. Stat. tit. 3, § 941(h), tit. 16 § 1991(a); Wash. Rev. Code §§ 41.56.080, 41.80.080(2)-(3); Wis. Stat. § 111.83(1); Wyo. Stat. § 27-10-103.

the "central premise" of American labor law, *see 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 270 (2009), and as the "fundamental ordering principle which shapes American labor law and collective bargaining," Clyde W. Summers, *Exclusive Representation: A Comparative Inquiry Into A "Unique" American Principle*, 20 Comp. Lab. L. & Pol'y J. 47, 47 (1998).

## 2.  The U.S. Supreme Court's decisions in *Knight* and *Janus* and subsequent legal developments

As the district court recognized, two U.S. Supreme Court cases are particularly relevant to this appeal. (*See* Special Appendix (S.A.) 7-18.)

In *Knight*, several community college faculty members who elected not to join the union representing their bargaining unit challenged Minnesota's exclusive-representation law as violating their speech and associational rights. 465 U.S. at 275-78. A three-judge district court panel rejected the challenge to exclusive representation in bargaining, ruling that such systems "are constitutionally valid on their face and as applied in the community colleges." *Knight v. Minnesota Cmty. Coll. Faculty Ass'n*, 571 F. Supp. 1, 12-13 (D. Minn. 1982). But the district court found that the union's exclusive representation of the bargaining unit at "meet

9

and confer" sessions on policy matters related to employment that were outside the scope of mandatory bargaining violated the employees' First Amendment rights. *Id.* at 10.

The Supreme Court summarily affirmed the district court's rejection of the plaintiffs' constitutional challenges to exclusive representation in collective bargaining. *See Knight v. Minnesota Cmty. Coll. Faculty Ass'n*, 460 U.S. 1048, 1048 (1984); *see also* 465 U.S. at 279. In addition, the Court reversed the district court's ruling with respect to the "meet and confer" sessions. As the Court explained, "the state has in no way restrained [the plaintiffs'] freedom to speak on any education-related issue or their freedom to associate or not to associate with whom they please, including the exclusive representative." 465 U.S. at 288. The plaintiffs were not required to become union members, and they remained "free to form whatever advocacy groups they like." *Id.* at 289. The Court thus held that the exclusive-representation system did not burden the instructors' First Amendment rights.

In *Janus*, the Supreme Court addressed the question whether public employees who choose not to join a union may be required to pay "agency fees" to defray the union's expenditures relating to collective

bargaining. 138 S. Ct. 2448. Overruling *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), *Janus* held that "the compelled subsidization of private speech seriously impinges on First Amendment rights," 138 S. Ct. at 2464, and that the statute at issue could not survive "exacting scrutiny," *id.* at 2465-69.

While *Janus* invalidated requirements that nonunion employees pay agency fees, the Court made clear that it was "not in any way questioning the foundations of modern labor law." *Id.* at 2471 n.7. To the contrary, the Court emphasized that its decision would not "require an extensive legislative response," because States otherwise "can keep their labor-relations systems exactly as they are." *Id.* at 2485 n.27 (quotation marks omitted).

In particular, the Court left no doubt that governments may continue to "require that a union serve as exclusive bargaining agent for its employees." *Id.* at 2478. The Court acknowledged the government's compelling interest in securing "labor peace," and concluded that mandatory agency fees are not necessary to achieve labor peace because exclusive representation adequately serves that purpose. *Id.* at 2466. Similarly, in ruling that preventing "free riding" was not a sufficient

11

justification for mandatory agency fees, the Court reasoned that unions can fairly provide exclusive representation for a bargaining unit without collecting such fees—again impliedly endorsing exclusive representation as a permissible means of securing labor peace. *See id.* at 2466-69.[5]

In at least sixteen cases decided both before and after *Janus*, federal and state courts—including this Court in *Jarvis v. Cuomo*, 660 F. App'x 72, 74-75 (2d Cir. 2016)—have unanimously concluded that the exclusive-representation model of labor relations does not violate the

---

[5] The Court also stated that a union designated as the exclusive representative for purposes of collective bargaining need not represent individual nonmembers in grievance proceedings or disciplinary matters, explaining that nonmembers "could be required to pay for that service or could be denied union representation altogether." 138 S. Ct. at 2468-69; *see id.* at 2469 n.6.

First Amendment.[6] The Supreme Court has on ten occasions refused to

take up the issue, most recently in June 2023.[7]

---

[6] *See Peltz-Steele v. UMass Faculty Fed'n*, 60 F.4th 1, 4-8 (1st Cir. 2023); *Adams v. Teamsters Union Loc. 429*, No. 20-1824, 2022 WL 186045, at *2-3 (3d Cir. Jan. 20, 2022); *Uradnik v. Inter Fac. Org.*, 2 F.4th 722, 725-27 (8th Cir. 2021); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 968-70 (10th Cir. 2021); *Bennett v. Council 31*, 991 F.3d 724, 727, 733-35 (7th Cir. 2021); *Akers v. Maryland State Educ. Ass'n*, 990 F.3d 375, 382 n.3 (4th Cir. 2021); *Ocol v. Chicago Teachers Union*, 982 F.3d 529, 532-33 (7th Cir. 2020); *Oliver v. Service Emps. Int'l Union Local 668*, 830 F. App'x 76, 80-81 (3d Cir. 2020); *Thompson v. Marietta Educ. Ass'n,* 972 F.3d 809, 813-14 (6th Cir. 2020); *Reisman v. Associated Facs. of Univ. of Me.*, 939 F.3d 409, 412-14 (1st Cir. 2019); *Branch v. Commonwealth Emp. Rels. Bd.*, 481 Mass. 810 (2019); *Mentele v. Inslee*, 916 F.3d 783, 786-91 (9th Cir. 2019); *Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018); *Hill v. Service Emps. Int'l Union*, 850 F.3d 861, 863-66 (7th Cir. 2017); *D'Agostino v. Baker*, 812 F.3d 240, 243-45 (1st Cir. 2016) (Souter, J.).

[7] *See Jarvis v. Cuomo*, 137 S. Ct. 1204 (2017); *Peltz-Steele v. UMass Fac. Fed'n*, No. 22-1123, 2023 WL 3937635 (U.S. June 12, 2023); *Ocol v. Chicago Teachers Union*, 142 S. Ct. 423 (2021); *Thompson v. Marietta Educ. Ass'n,* 141 S. Ct. 2721 (2021); *Reisman v. Associated Facs. of Univ. of Me.*, 141 S. Ct. 445 (2020); *Branch v. Massachusetts Dep't of Lab. Relations*, 140 S. Ct. 858 (2020); *Miller v. Inslee*, 140 S. Ct. 114 (2019); *Bierman v. Walz*, 139 S. Ct. 2043 (2019); *Hill v. Service Emps. Int'l Union*, 138 S. Ct. 446 (2017); *D'Agostino v. Baker*, 136 S. Ct. 2473 (2016)

13

## B. Factual Background

Unless otherwise stated, the following facts are drawn from the allegations of the complaint and accepted as true for purposes of this appeal.

Plaintiffs are employed as instructors at various institutions within the CUNY system. (J.A. 22-24.) CUNY is an institution of higher education established under New York Education Law § 6201 et seq., and operates 25 senior and community colleges across the City's five boroughs. CUNY serves more than 225,000 degree-seeking students and employs more than 40,000 faculty and staff.[8]

In June 1972, PERB certified CUNY's "instructional staff"—a group that currently comprises more than 30,000 faculty and staff members—as a bargaining unit. (J.A. 23, 25.[9]) PERB also certified PSC as the exclusive negotiating representative for CUNY's instructional staff. (J.A. 23, 25, 33.) Members of the instructional staff are not required

---

[8] *See* CUNY, *Student Data Book* (n.d.); CUNY, Staff Facts, Headcount Summary as of Fall 2022 (2023).

[9] *See* Certification of Representation & Order to Negotiate, *In re Board of Higher Ed. of City of N.Y.*, Nos. C-0728, C-0808 (N.Y. PERB June 16, 1972).

14

to join PSC, *see* Civ. Serv. Law § 202, but they may choose to do so by executing an agreement and paying the applicable dues. (J.A. 32-33.)

Each of the plaintiffs was previously a member of PSC. (J.A. 20, 25-29.) Five of the plaintiffs resigned from PSC between June and September 2021, allegedly in protest of PSC's adoption in June 2021 of a "Resolution in Support of the Palestinian People." (J.A. 20, 25-29, 263-264.) The sixth plaintiff resigned in or around 2010; she also disagrees with PSC's Resolution. (*See* J.A. 23, 28-29.) Plaintiffs allege that they believe that the Resolution reflects anti-Semitic views with which plaintiffs disagree. (J.A. 20, 29.)

Although plaintiffs have resigned from PSC, they have chosen to remain employed as CUNY instructors. Like other members of CUNY's instructional staff, plaintiffs are free to express their opinions about CUNY, PSC, those institutions' public positions, and any other topic on which plaintiffs may wish to speak.[10] And like other members of CUNY's

---

[10]  Plaintiffs and other members of the instructional staff have in fact spoken frequently about their opposition to PSC's Resolution. *See, e.g.*, Avraham Goldstein, *I'm Stuck With an Anti-Semitic Labor Union*, Wall St. J. (Jan. 21, 2022); Mario Caruso, Letter to the Editor, *What's Going On with CUNY's Woke Union*, Wall St. J. (Feb. 8, 2022);

(*continued on the next page*)

instructional staff, plaintiffs are also free to form associations for the purpose of expressing and amplifying their views on any issue. For example, members of the instructional staff have formed the CUNY Alliance for Inclusion (CAFI), which opposes and advocates against PSC's Resolution.[11] Several of the plaintiffs appear among the 482 faculty and staff signatories to a CAFI statement expressing opposition to the Resolution.[12]

---

KC Johnson, *How CUNY's Faculty Union Bet on Israel Hatred, and Lost,* Tablet (Aug. 12, 2021); David Brodsky, *At CUNY, My Union Condemns Israel for Human Rights Abuses, but Cheers on China,* Haaretz (July 22, 2021); David Israel, *Dozens Quit CUNY Faculty Union over Anti-Semitic, Anti-Israel Resolution,* JewishPress.com (July 22, 2021); Scott Jaschik, *Division in CUNY Faculty Union,* Inside Higher Ed (July 22, 2021); Leah Garrett, *I Resigned from the CUNY Union Because of Its Antisemitism,* Forward (July 14, 2021); Robert Cherry, *CUNY Must Confront Anti-Semitism in Its Midst,* N.Y. Daily News (July 11, 2021); A. Jay Adler, *Why I Resigned from the Professional Staff Congress (PSC)-CUNY,* Algemeiner J. (June 24, 2021); KC Johnson, *An Opening for Dissenters,* City J. (June 22, 2021).

[11] *See* CUNY Alliance for Inclusion (n.d.).

[12] CUNY Alliance for Inclusion, *CUNY Community Statement Encouraging Mutual Respect and Engagement Towards a Just Middle East Peace and a CUNY Free of Harassment* (n.d.).

16

**C.     The District Court's Dismissal of Plaintiffs'
          First Amendment Claims**

Plaintiffs filed this action in the U.S. District Court for the Southern District of New York in January 2022. (J.A. 19-44.) As relevant here, the complaint alleges that the Taylor Law violates plaintiffs' First Amendment rights of expressive association by purportedly (1) compelling plaintiffs to associate with PSC, a voluntary union from which all of them have resigned (J.A. 36-38), and (2) compelling plaintiffs, as persons who choose to be employed as CUNY instructors, to associate with CUNY's instructional staff (J.A. 38-40).[13] Defendants moved under Rule 12(b)(6) to dismiss the complaint, and the district court (Engelmayer, J.) granted the motion. (S.A. 1-30.)

The district court first ruled that "exclusive representation by public-sector labor unions does not violate the speech or associational rights of non-union members." (S.A. 14 (quotation marks omitted).) The court observed that this Court has already "rejected the narrow construction of *Knight* that plaintiffs propose" (S.A. 11), and held that

---

[13] Plaintiffs' third claim, based on purportedly improper dues deductions (J.A. 40-42), has been resolved and is not at issue in this appeal (*see* Appellants' Br. at 9).

17

*Knight* "'foreclose[s]'" the claim that an exclusive-bargaining arrangement violates the First Amendment. (S.A. 12 (quoting *Jarvis*, 660 F. App'x at 74).)

The district court next rejected plaintiffs' contention that *Janus* somehow repudiates *Knight*'s First Amendment holding. While *Janus* overruled *Abood* and held that the First Amendment does not permit the government to require public employees to pay agency fees, the decision "cannot fairly be read more broadly to impugn the exclusive representation model of public sector [collective] bargaining upheld in *Knight*." (S.A. 16.) As the court explained, *Janus* "turned on the non-member's compulsory subsidization of a union whose views and values he did not share" (S.A. 16), which is a problem not presented where (as in this case) employees are merely included in a bargaining unit and are not required to join or to remit payments to any union (*see* S.A. 16-17).

The district court went on to consider the merits of plaintiffs' claims, "[i]n the interest of completeness." (S.A. 19; *see* S.A. 19-28.) First, the court restated that "*Knight* and its circuit-court progeny squarely foreclose" plaintiffs' claim based on compelled association with PSC. (S.A. 19; *see* 19-20; *see also* S.A. 23-25 (also rejecting "variant" of this theory).)

18

The court explained, moreover, that a public employee who does not wish to be associated with a union like PSC has many available avenues to express his or her own views and thereby to counteract any perception that he or she supports the union or shares its views. Given the availability of such alternative means of expression, the court concluded that there is no First Amendment right for nonunion public employees to bargain separately with their employer. (S.A. 19-20.)

Next, the court explained that even if (as plaintiffs contended) *Knight* did not directly foreclose their First Amendment challenge to their purportedly compelled association with other members of CUNY's instructional staff, "the logic of *Knight* and its progeny would equally dispose of this theory." (S.A. 20.) As the court explained, a bargaining unit by its nature "is comprised of a large number of employees" who "cannot be expected to agree on every issue, employment-related or otherwise, any more than a dissident member of the bargaining unit can be expected invariably to share the views of the bargaining representative elected by the unit." (S.A. 20-21.) *Knight*'s holding that a dissident "does not have a First Amendment right to bargain separately" in order to dissociate from a union applies equally to defeat plaintiffs'

19

theory that they have a First Amendment right to bargain separately in order to dissociate from their bargaining unit. (S.A. 21.) The court further ruled that in any event, plaintiffs' challenge to their purportedly compelled association with their bargaining unit fails for the separate reason that such an association has no expressive content and so does not trigger the First Amendment. (S.A. 21-23.)

Finally, the court considered and dismissed plaintiffs' alternative theory—not designated as a separate claim in the complaint—that post-*Janus* amendments to the Taylor Law violate the First Amendment by allowing PSC to decline to provide representation to nonmembers in situations that involve "questioning by the employer," "in statutory or administrative proceedings or to enforce statutory or regulatory rights," or in "a grievance, arbitration or other contractual process" concerning discipline or employee evaluation. (S.A. 25; *see* S.A. 25-28.) The court explained that the amendments "adopt[] the approach invited by *Janus*," which expressly stated that a union may deny representation to a nonmember in individualized proceedings without running afoul of the Constitution. (S.A. 26 (citing *Janus*, 138 S. Ct. at 2468-69).)

Having found that none of plaintiffs' theories states a legally cognizable First Amendment claim, the district court dismissed the complaint's first two causes of action. (S.A. 29.) After further proceedings resulted in voluntary dismissal of the third cause of action, the district court entered final judgment on March 14, 2023. (S.A. 31-32.) Plaintiffs appealed. (J.A. 391.)

## SUMMARY OF ARGUMENT

The district court correctly dismissed the complaint. The Supreme Court's decision in *Knight* precludes plaintiffs' First Amendment claims, as it rejected materially identical legal theories on materially identical facts. And every one of the sixteen subsequent appellate decisions on the issue, including this Court's decision in *Jarvis*, has held that exclusive-representation statutes do not violate the right of expressive association. Plaintiffs offer no sound basis to depart from this precedent.

Plaintiffs' claims also fail on their merits. The Taylor Law does not burden plaintiffs' free-speech rights, because it neither restricts plaintiffs' speech nor compels them to speak. Plaintiffs' theory that the statute burdens their speech rights by allowing PSC to speak "for" them is unsupported and implausible—including because no reasonable

21

observer would attribute PSC's speech on behalf of its membership to individual CUNY employees who are not union members.

The Taylor Law also does not burden plaintiffs' implied First Amendment right of expressive association. The statute does not restrict plaintiffs' ability to join with others to advocate their views on any subject. Nor were plaintiffs compelled to become union members or to rejoin PSC after they resigned. Plaintiffs are "associated" with PSC only insofar as the union acts as the exclusive representative of CUNY's entire instructional staff in collective bargaining. But that limited association with PSC does not burden plaintiffs' First Amendment rights of *expressive* association, because it does not affect plaintiffs' ability to express themselves or to advocate or their viewpoints.

For that same reason, plaintiffs' inclusion in CUNY's instructional-staff bargaining unit does not impair their First Amendment rights. Being members of the instructional staff has no expressive effects—membership does not restrict plaintiffs' speech, nor does it compel them to speak, nor does it imply that they endorse any position taken by PSC or by anyone else. And in the absence of any burden on plaintiffs' ability

to advocate their viewpoints, plaintiffs again cannot make out an expressive-association claim under the First Amendment.

Finally, the judgment of dismissal may be affirmed on the alternative ground that any minimal burden on plaintiffs' rights satisfies any applicable First Amendment scrutiny. The government has a compelling interest in maintaining public-sector labor peace in order to secure the uninterrupted provision of critical services including not only education but also policing, firefighting, healthcare, sanitation, and transportation. And exclusive representation is a permissible means of attaining that compelling state interest. Plaintiffs do not allege a viable alternative. They instead propose to eliminate the fundamental ordering principle of American labor law. That proposal should be rejected in every respect.

## STANDARD OF REVIEW

The order granting defendants' motion to dismiss is reviewed de novo. *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023).

A motion to dismiss is correctly granted "when the pleadings fail to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (some quotation marks omitted)). In addition to the pleadings, the court may consider documents attached to the complaint and facts that are subject to judicial notice. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021).

## ARGUMENT

As the district court correctly concluded, plaintiffs' First Amendment claims are contrary to the Supreme Court's binding decision in *Knight* as well as the unanimous weight of appellate authority. These cases establish that exclusive-representation statutes like the Taylor Law do not burden nonmembers' rights of free expression or expressive association. In any event, even if *Knight* were not binding and plaintiffs had sufficiently alleged a cognizable burden on First Amendment rights, the Taylor Law would survive any level of constitutional scrutiny.

## POINT I

### THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' FIRST AMENDMENT CHALLENGES TO THE TAYLOR LAW

### A. *Knight* Forecloses Plaintiffs' First Amendment Claims

The district court correctly concluded that *Knight* compels dismissal of plaintiffs' First Amendment claims. (S.A. 8-18.) The facts of the two cases are "on all fours," involving First Amendment challenges to public-sector collective-bargaining regimes involving a voluntary-membership union acting as exclusive representative of a professors' bargaining unit. (S.A. 14.) There was no First Amendment violation in *Knight*, and there is no salient difference between that case and this one. It follows that there is no First Amendment violation here.

On appeal, plaintiffs all but concede that the cases are materially identical on their facts. Instead of attempting to draw factual distinctions, plaintiffs offer an unduly narrow reading of the legal issues decided in *Knight*. Specifically, plaintiffs argue that "*Knight*'s holding that the government can choose to whom it *listens* says little about the government's ability to dictate who *speaks* to the government for individuals." Appellants' Br. at 27. This Court should reject plaintiffs' unreasonable view of *Knight* and their attempt to avoid its binding effect.

25

As explained in more detail below (at 32-34), the factual predicate of plaintiffs' attempt to distinguish *Knight* is false. Neither PSC nor any other union operating under the Taylor Law "speaks to the government *for individuals*," as plaintiffs incorrectly assert (*id.* (emphasis altered)). Nor are plaintiffs correct to say (*id.* at 33) that *Janus* held that an exclusive representative has "power 'to speak' for nonmembers" in a constitutionally significant sense. Rather, *Janus* stated that a union has the "right to speak *for all the employees in collective bargaining*." 138 S. Ct. at 2467 (emphasis added). And when a union speaks *outside* of collective bargaining, it speaks as a separate legal entity on behalf of itself. Because a bargaining unit may (as in this case) comprise tens of thousands of members who obviously will have differing views on any number of subjects, no reasonable member of the public could believe that every member of a bargaining unit endorses everything that a union may say—in collective bargaining or in the public sphere. PSC's words thus do not represent plaintiffs' speech. And plaintiffs therefore cannot distinguish their legal theory from the one rejected in *Knight*, in which the Supreme Court ruled that exclusive representation did not infringe the professors' "speech and associational rights." 465 U.S. at 288.

Moreover, this Court has already rejected plaintiffs' legal argument in *Jarvis*. The plaintiffs in that case (represented by the same attorneys as in this one) tried the same end-run around *Knight* that plaintiffs here are attempting—contending that the appointment of an "exclusive bargaining representative for their bargaining unit violates their First Amendment rights because it compels union association." 660 F. App'x at 74. But this Court correctly ruled that "[t]he argument is foreclosed by [*Knight*]," which dictates the conclusion that an exclusive-representation regime does not impose "a constitutionally impermissible burden on their right to free association." *Id.* Plaintiffs in this case have no substantive rejoinder to *Jarvis*, which is directly on point. Although this Court resolved *Jarvis* by summary order (*see* Br. at 28, 35), that designation reflects a determination that the question presented "was not subject to reasonable dispute"—from which it follows that there is no basis to rule differently in this materially identical appeal. *See United States v. Montague*, 67 F.4th 520, 535 n.4 (2d Cir. 2023).

Nor do plaintiffs have any meaningful response to the sixteen decisions, issued by nine federal courts of appeals and the Supreme Judicial Court of Massachusetts, which all unanimously concluded that

27

claims materially identical to those raised in this case are foreclosed by

*Knight*.[14] Plaintiffs assert that the decisions arrayed against them are

"not persuasive" (Br. at 29), but they are unable to cite even a single

decision adopting their legal theory.[15]

Plaintiffs are also incorrect in asserting that their narrow

interpretation of *Knight* is necessary to avoid conflict with Supreme

Court cases purportedly holding that "compelling individuals to accept

an exclusive representation impinges on their rights" (Br. at 30; *see id.* at

---

[14] *See Peltz-Steele*, 60 F.4th at 4-8; *Adams*, 2022 WL 186045, at *2-3; *Uradnik*, 2 F.4th at 725-27; *Hendrickson*, 992 F.3d at 968-70; *Bennett*, 991 F.3d at 727, 733-35; *Akers*, 990 F.3d at 382 n.3; *Ocol*, 982 F.3d at 532-33; *Oliver*, 830 F. App'x at 80-81; *Thompson,* 972 F.3d at 813-14; *Reisman*, 939 F.3d at 412-14; *Branch*, 481 Mass. at 819-29; *Mentele*, 916 F.3d at 786-91; *Bierman*, 900 F.3d at 574; *Hill*, 850 F.3d at 863-66; *D'Agostino*, 812 F.3d at 243-45.

[15] Plaintiffs misplace their reliance (Br. at 29-30) on stray remarks in the Ninth Circuit's decision in *Mentele* and the Sixth Circuit's decision in *Thompson*. In *Mentele*, the court explained that *Knight* forecloses a compelled-association claim because the Supreme Court's approval of the "exclusion of non-union faculty members from meet and confer sessions necessarily meant that union representatives expressed the faculty's 'official collective position' on behalf of even dissenting non-union members." 916 F.3d at 788-89. And in *Thompson*, the court held that "*Knight* controls" and defeats a "compelled-representation challenge" on facts like those presented here. 972 F.3d at 813. The court explained that plaintiffs' "cramped reading of *Knight* would functionally overrule the decision," which is "something lower court judges have no authority to do." *Id.* at 814.

30-32). None of the cited decisions suggested that an exclusive-representation scheme burdens a nonunion employee's *First Amendment* rights, which are the only ones at issue in this case. Rather, to address the potential for an exclusive representative to impinge upon *other* rights (namely, nonunion employees' equal-protection rights), the Supreme Court interpreted federal labor law to require an exclusive representative to provide *fair* representation to all affected employees. *See Steele*, 323 U.S. at 200-03.[16] That remedy—which the Taylor Law expressly enacts, *see* Civ. Serv. Law § 209-a(2)—is aimed at preventing discrimination, not at alleviating some imagined burden on nonunion employees' speech rights. The Court has never imposed a free-speech remedy upon an exclusive-representation regime—precisely because exclusive representation does not burden First Amendment rights.

Finally, plaintiffs are mistaken in arguing (Br. at 32-34) that *Janus* requires a different interpretation of *Knight*. While the Supreme Court

---

[16] Subsequent decisions restated *Steele*'s reasoning in discussing the fundamentals of labor law. *See American Comm'ns Ass'n v. Douds*, 339 U.S. 382, 401-02 (1950); *Vaca v. Sipes*, 386 U.S. 171, 181-82 (1967); *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967); *14 Penn Plaza*, 556 U.S. at 271.

29

stated that exclusive representation restricts "nonmembers' rights" and "associational freedoms," 138 S. Ct. at 2469, 2478, it did *not* hold that a regime like the one at issue here imposes cognizable First Amendment burdens. To the contrary, the Court in *Janus* expressly relied on the continued viability of exclusive representation as a reason why mandatory agency fees were not necessary to achieve the governments' compelling interest in securing labor peace. *See id.* at 2465-69, 2478. See *supra* at 11-12. The Court also made clear that it was "not in any way questioning the foundations of modern labor law," *id.* at 2471 n.7, and that, apart from agency-fee requirements, the First Amendment permits States to "keep their labor-relations systems exactly as they are," *id.* at 2485 n.27 (quotation marks omitted). In this context, *Janus*'s references to "rights" and "freedoms" in the passages on which plaintiffs rely do not point to *First Amendment* rights of free expression, but to employees' ordinary freedom to make individualized employment contracts (and to form associations to advance their economic interests). But such rights are permissible subjects of state regulation, and are not subject to any relevant First Amendment protection. *See, e.g.*, *Giboney v. Empire*

30

*Storage & Ice Co.*, 336 U.S. 490, 501-02 (1949); *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 392-93 (1937).

In any event, every court to have considered the question since *Janus* has rejected plaintiffs' argument that the decision requires reading *Knight* so narrowly as to "functionally overrule the decision." *Thompson*, 972 F.3d at 814; *see, e.g., Peltz-Steele*, 60 F.4th at 7-8; *Bennett*, 991 F.3d at 735; *Mentele*, 916 F.3d at 789; *Bierman*, 900 F.3d at 574. In keeping with its own prior decision in *Jarvis*, this Court should do the same.

## B. The Complaint Fails to Allege a Cognizable Burden on Plaintiffs' First Amendment Rights

Even if *Knight* were not controlling, the district court correctly dismissed the complaint because it fails to allege a cognizable burden on plaintiffs' First Amendment rights. (S.A. 19-28.) In attempting to show otherwise, plaintiffs assert three theories of First Amendment injury. First, plaintiffs contend that the Taylor Law violates their free-speech rights by allowing PSC to "speak for" them. Second, plaintiffs contend that the Taylor Law violates their right of expressive association by compelling them to associate with PSC. And third, plaintiffs contend that

31

the Taylor Law violates their right of expressive association by compelling them to associate with CUNY's instructional staff. None of these contentions is sufficient to allege a cognizable burden on activity protected by the First Amendment.

### 1.   Exclusive representation neither restricts nor compels any expressive activity.

Plaintiffs do not and cannot assert that the Taylor Law violates their First Amendment rights in any traditional sense. The statute does not restrict the plaintiffs' own speech, nor does it compel plaintiffs to deliver or to endorse any message. With ordinary First Amendment theories unavailable, plaintiffs contend that exclusive representation "infringe[s] on the Professors' free speech rights by granting PSC legal authority to speak and contract for them." Br. at 15; *see id.* at 14-17. The district court rightly disregarded this theory, because the complaint does not assert a free-speech cause of action. (*See* J.A. 36-40.) Any such claim is therefore unpreserved. *See, e.g.*, *Eureka V LLC v. Town of Ridgefield*, 535 F. App'x 41, 42 (2d Cir. 2013).

In any case, plaintiffs' free-speech argument fails on the merits. As noted above (at 26), PSC does not speak for individual employees when

32

it engages in collective bargaining or public advocacy. Rather, as *Janus* makes clear, a union may speak "for *all the employees* in collective bargaining." 138 S. Ct. at 2467 (emphasis added). The union speaks for itself (a distinct legal entity), and on behalf of the "instructional staff" bargaining unit *as a collective*. But it does not express the personal views of any individual employee, does not purport to express any employee's views, and cannot reasonably be understood to express any employee's views. *See Knight*, 465 U.S. at 276.

The First Circuit explained the point in *D'Agostino*. The limited relationship between a union and any nonmembers whose interests it represents in contract negotiations "is one that is clearly imposed by law, not by any choice on a dissenter's part," making it "readily understood" that the nonunion employees do not endorse everything that the union says. 812 F.3d at 244. That is particularly true where (as in *D'Agostino* and as in this case) the nonunion employees are free to speak for themselves, and so "may choose to be heard distinctly as dissenters"— ensuring that there is no "unacceptable risk [that] the union speech will be attributed to them contrary to their own views." *Id.*; *see Knight*, 465 U.S. at 288 (no speech burden where statute "has in no way restrained

33

[employees'] freedom to speak" on their own behalf). Thus, when a union

speaks or negotiates on behalf of a bargaining unit, it does not speak "for"

individual nonmembers in any sense relevant to the First Amendment.

And because PSC does not speak "for" any individual employee, plaintiffs'

free-speech theory has no basis. *See D'Agostino*, 812 F.3d at 244; *Peltz-*

*Steele*, 60 F.4th at 7; *Reisman*, 939 F.3d at 412-14; *cf. Rumsfeld v. Forum*

*for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 64-65 (2006) (no First

Amendment violation where military recruiters' speech could not be

attributed to host law schools); *Shurtleff v. City of Boston*, 142 S. Ct. 1583,

1589-93 (2022) (no government speech where private messages on flags

raised at city hall could not be attributed to city government).

Plaintiffs misplace their reliance (Br. at 15) on the plurality opinion

in *Pacific Gas & Electric Co. v. Public Utilities Commission of California*,

475 U.S. 1 (1986). In that case, the utilities commission had ordered

Pacific Gas to include in its billing envelopes an insert prepared by a

group with which Pacific Gas disagreed. *Id.* at 5-7 (plurality op.). Those

inserts would either supplant or compete with Pacific Gas's own

newsletters, which it had packaged and distributed with its customers'

monthly bills for decades. *See id.* at 5. And—critically—it was evident

34

that by including the inserts in its billing envelopes, Pacific Gas could "appear to agree" with the views expressed therein. *Id.* at 15.

The Supreme Court plurality held that the commission's order burdened Pacific Gas's speech rights by compelling it "to assist in disseminating [an opponent's] message" and by requiring the company "to associate with" that message. *Id.* And on the particular fact-pattern presented by the commission's order, the plurality indicated that the constitutional violations were not remedied by Pacific Gas's ability to respond (at its own expense) to its opponent's messages. *Id.* at 15-16. The plurality reasoned that the commission could not force the company to choose between appearing to agree with statements made by an opponent through the company's own private property (on the one hand) and altering its own message in order to respond to and disassociate from its opponent's statements (on the other). *Id.* Either of those choices would have amounted to impermissible compelled speech.

This case is not like *Pacific Gas*. Plaintiffs here are not required to "assist in disseminating" PSC's message, and (as discussed) there is no risk that plaintiffs will "appear to agree" with anything PSC says. *Cf. id.* at 15. To the contrary, it is "readily understood" that PSC does not speak

for plaintiffs and that its views do not reflect their own. *See D'Agostino*, 812 F.3d at 244. Indeed, as noted above (at 15 n.10), plaintiffs and other members of the instructional staff have vehemently and publicly expressed their opposition to PSC's political views in multiple fora. Thus, unlike in *Pacific Gas*, the complaint in this case does not allege any impermissible compulsion of plaintiffs' speech.

### 2. Exclusive representation in collective bargaining does not burden plaintiffs' associational rights.

The district court correctly rejected Plaintiffs' next theory—that the Taylor Law burdens their right of expressive association by "forcing" them "into a mandatory agency relationship with PSC" (Br. at 17). (*See* S.A. 19-20, 23-25.) This contention is both legally and factually incorrect.

As the Supreme Court explained in *Roberts v. United States Jaycees*, the case law has identified "two distinct senses" in which the Constitution protects the freedom of association. 468 U.S. 609, 617 (1984). Plaintiffs do not and cannot invoke the first, "intrinsic" sense of free association, which applies only to "intimate human relationships" akin to familial relationships. *See id.* at 617-18; *see id.* at 617-21. Instead, plaintiffs rely (Br. at 4, 11, 19) on the second, "instrumental" form of

associational freedom, which protects an implicit "right to associate for the purpose of engaging in . . . activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618.

To state a claim under this theory, plaintiffs would have to allege facts showing that "the state action at issue"—namely, PSC's role as the bargaining unit's exclusive representative—"significantly affected the [plaintiffs'] ability to advocate [their] viewpoints." *Slattery v. Hochul*, 61 F.4th 278, 287 (2d Cir. 2023) (quotation marks omitted); *see, e.g.*, *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). But plaintiffs' complaint contains no such allegations.

For one thing, plaintiffs do not allege (and cannot plausibly allege) that the Taylor Law prevents them from associating with others in order to express their views, to petition the government, or to engage in other First Amendment activity. *See, e.g.*, *Adams*, 2022 WL 186045, at *2; *Bennett*, 991 F.3d at 735-35; *Bierman*, 900 F.3d at 574; *Hill*, 850 F.3d at 864. To the contrary, plaintiffs "are free to form whatever advocacy groups they like," *Knight*, 465 U.S. at 289, through which they may express their views on any topic to anyone who will listen. Nothing stops

37

plaintiffs from joining or creating a new advocacy organization to advocate with PSC, CUNY's instructional staff, CUNY itself, state officials, the courts, and/or the public at large. (*See* S.A. 19.) For example, plaintiffs freely associated with one another and with their attorneys in order to bring this lawsuit. And a large group of CUNY scholars and educators (apparently including several of the plaintiffs) freely joined the CUNY Alliance for Inclusion to express opposition to the same PSC statements that allegedly animated this case. See *supra* at 16 & nn.11-12.

Plaintiffs also are not required to "associate" with PSC in any ordinary sense of that term—they are not required to join or belong to the union. *See* Civ. Serv. Law § 202. Indeed, plaintiffs have all resigned from PSC. (A. 22-29.) And because plaintiffs "are not required to become members" of PSC, *see Knight*, 465 U.S. at 289, the Taylor Law "has in no way restrained" their freedom "not to associate with . . . the exclusive representative," *id.* at 288; *see, e.g.*, *Jarvis*, 660 F. App'x at 74; *Bennett*, 991 F.3d at 734-35; *Bierman*, 900 F.3d at 574; *Hill*, 850 F.3d at 864-66.[17]

---

[17] Plaintiffs err in their attempt to argue the contrary (Br. at 18-19 & n.4) based on *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279 (11th Cir. 2010), and cases concerning forced affiliations with political parties,

(*continued on the next page*)

Because the Taylor Law neither prevents plaintiffs from associating with others nor compels them to join PSC, plaintiffs attempt to conjure a compelled association based on a purported "mandatory agency relationship" between themselves and PSC (Br. at 17). But that theory fails as a matter of law, because any limited association between plaintiffs and PSC does not "significantly affect" plaintiffs' "ability to advocate [their] viewpoints."[18] *See Slattery*, 61 F.4th at 287 (quotation

---

*see Elrod v. Burns*, 427 U.S. 347 (1976); *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996). As the district court observed, such cases are "far afield." (S.A. 24.) *Mulhall* addressed only Article III standing, not the merits of any First Amendment claim. And the associational-interest analysis in *Mulhall* "turned on employees being forced to *belong* to a union." *Hill*, 850 F.3d at 865 n.3 (emphasis added); *see Mulhall*, 618 F.3d at 1288. Such analysis is inapplicable here, because the Taylor Law does not require plaintiffs to belong to PSC. *See D'Agostino*, 812 F.3d at 244-45 (similarly distinguishing *Mulhall*). The *Elrod* line of decisions is inapposite for the same reason. *See Hill*, 850 F.3d at 865; *Bierman v. Dayton*, 227 F. Supp. 3d 1022, 1030 (D. Minn. 2017), *aff'd*, 900 F.3d 570 (8th Cir. 2018).

[18] There is in fact no "mandatory agency relationship" between any plaintiff and PSC. The union acts as the agent of *all the employees in the bargaining unit*, as a collective whole. *See Wallace Corp. v. NLRB*, 323 U.S. 248, 255 (1944); *Peltz-Steele*, 60 F.4th at 4-5; *Reisman*, 939 F.3d at 412-14. But PSC does *not* act as any individual employee's agent, because no individual employee has authority to direct PSC's conduct (or its speech). *See Restatement (Third) of Agency* § 1.01 (2006) (Westlaw);

(continued on the next page)

marks omitted). Absent any such burden, plaintiffs cannot state a claim for relief. *See, e.g.*, *Rumsfeld,* 547 U.S. at 68-70; *Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 548-49 (1987); *Sullivan v. University of Washington*, 60 F.4th 574, 580-81 (9th Cir. 2023).

Finally, plaintiffs' extended protestation that PSC "does not owe a full fiduciary duty" to nonmembers because it is not required to provide those persons representation in individualized grievance or disciplinary proceedings (Br. at 22; *see id.* at 22-24; *see also* Civ. Serv. Law § 209-a(2)) has nothing to do with the First Amendment. Plaintiffs do not identify any way in which their speech rights are affected by the limits on PSC's obligations to nonmembers who pay no union dues or agency fees.

---

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 567 (1990) (plurality op.).

The relationship between employee and union is better analogized to that between a trust beneficiary and the trustee. *See Chauffeurs*, 494 U.S. at 567-68 (plurality op.). But contrary to plaintiffs' suggestion (Br. at 17-18), appointing a trustee to manage a trust's assets does not impair a trust beneficiary's First Amendment rights. That is because such an appointment neither burdens the beneficiary's expression nor compels the beneficiary to speak. Giving the trustee control over a person's property without the owner's consent might theoretically generate *due process* concerns (it might deprive the property owner of his or her property rights without sufficient protection), but the hypothetical appointment of a trustee would not violate the property owner's *First Amendment* rights.

Moreover, as the district court observed (S.A. 26-27), the limits on PSC's duties reflect "the approach invited by *Janus*," under which unions are not required to shoulder the burden of providing representation in individualized hearings to individual nonmembers who do not pay for such services. 138 S. Ct. at 2468-69.

### 3. Inclusion in a bargaining unit does not burden plaintiffs' associational rights.

Plaintiffs' third and final theory—that their inclusion in CUNY's instructional-staff bargaining unit impairs their First Amendment right of expressive association (*see* Br. at 19-22)—also fails as a matter of law. (*See* S.A. 20-23.) As with their challenge to PSC's designation as the instructional staff's exclusive representative, plaintiffs do not allege any way in which being members of a bargaining unit "significantly affect[s] the[ir] ability to advocate [their] viewpoints." *Slattery*, 61 F.4th at 287.

Contrary to plaintiffs' assertion (Br. at 20), their association with the instructional staff is not "inherently expressive." The complaint does not allege facts suggesting that plaintiffs' membership in the instructional staff (a consequence of being employed as CUNY instructors) carries with it the implication that they support PSC or that

41

they endorse the union's messages. (*See* S.A. 21.) To the contrary, it is "readily understood" that plaintiffs' limited relationship with the instructional staff "is one that is clearly imposed by law, not by any choice on a dissenter's part"—such that no observer would think that every instructional staff member supports PSC or its positions. *See, e.g.*, *D'Agostino*, 812 F.3d at 244. And again, plaintiffs may freely "choose to be heard distinctly as dissenters." *Id.* Their inclusion in the bargaining unit does not stop them from expressing opposition to PSC's positions, or dissenting from the choice to be represented by PSC, or proclaiming their views on any other topic. See *supra* at 15 & n.10. Nor does plaintiffs' membership in the instructional staff prevent them from forming other associations through which to express and amplify their distinct views. See *supra* at 16 & nn.11-12. In short, there is again no "unacceptable risk [that] the union speech will be attributed to them contrary to their own views." *D'Agostino*, 812 F.3d at 244; *see Knight*, 465 U.S. at 288.

While plaintiffs contend that the Taylor Law burdens their associational rights by "effectively conscript[ing]" them "to support PSC's message" through a marginal increase in the union's negotiating leverage (Br. at 21-22), no court has ever adopted such a strained conception of

42

First Amendment injury. Indeed, *Knight* squarely rejected such a theory—explaining that while it is "doubtless true that the unique status of the exclusive representative . . . amplifies its voice in the policymaking process," such "amplification" does not cognizably "impair[] individual instructors' constitutional freedom to speak." 465 U.S. at 288; *see Reisman*, 939 F.3d at 414; *D'Agostino*, 812 F.3d at 244.

Plaintiffs' position is also contrary to *Rumsfeld*, as the district court correctly observed (S.A. 21-23). In that case, the Supreme Court held that the plaintiff universities suffered no speech or associational injury from being made to associate with military recruiters, even though this entailed hosting the military and its message. *See* 547 U.S. at 60-62, 68-70. That requirement did not burden the universities' First Amendment rights because the universities' own expression did not suffer—they were not compelled to speak or to endorse the military, nor were they otherwise hindered in advocating their own viewpoints. *See id.* The same analysis applies here: Any limited association between plaintiffs and their bargaining unit does not burden plaintiffs' First Amendment rights, because that association neither limits nor compels plaintiffs' expressive freedom.

43

In short, plaintiffs have alleged no way in which their narrow association with their bargaining unit has "has restrained [their] freedom to speak on any . . . issue," *Knight*, 465 U.S. at 288, nor any way in which they are not "free to associate to voice their disapproval of [PSC's or the instructional staff's] message," *see Rumsfeld*, 547 U.S. at 69-70; *see, e.g.*, *D'Agostino*, 812 F.3d at 244. And because plaintiffs have alleged no burden on their own expression, their First Amendment claim fails as a matter of law.

## POINT II

### EXCLUSIVE REPRESENTATION SATISFIES FIRST AMENDMENT SCRUTINY

Because the district court correctly determined that the Taylor Law does not impinge on plaintiffs' First Amendment rights, it did not reach the question whether any burdens imposed by the statute would pass constitutional scrutiny. But even if this Court were to determine (contrary to *Knight* and every other court to consider the question) that plaintiffs have alleged a cognizable burden on their rights of speech or expressive association, it still should affirm the judgment of dismissal. *See, e.g.*, *Brokamp*, 66 F.4th at 397-403 (applying First Amendment

44

scrutiny but affirming Rule 12(b)(6) dismissal because state interest justified speech restriction). That is because—as every court to reach the question has held[19]—the State's compelling interest in labor peace amply justifies any slight burden on plaintiffs' First Amendment rights.[20]

*First*, the State has a compelling interest in securing labor peace—i.e., in avoiding "the conflict and disruption that . . . would occur if the employees in a [bargaining] unit were represented by more than one union" or if individual employees could strike out on their own. *See Janus*, 138 S. Ct. at 2465. The Supreme Court treated labor peace as an

---

[19] *See Mentele*, 916 F.3d at 790-91; *Hendrickson v. AFSCME Council 18*, 434 F. Supp. 3d 1014, 1029-30 (D.N.M. 2020), *aff'd*, 992 F.3d 950 (10th Cir. 2021); *Reisman v. Associated Facs. of Univ. of Me.*, 356 F. Supp. 3d 173, 178 (D. Me. 2018), *aff'd*, 939 F.3d 409 (1st Cir. 2019); *Thompson v. Marietta Educ. Ass'n*, No. 18-cv-628, 2019 WL 6336825, at *7-8 (S.D. Ohio Nov. 26, 2019), *aff'd*, 972 F.3d 809 (6th Cir. 2020); *Uradnik v. Inter Fac. Org.*, No. 18-cv-1895, 2018 WL 4654751, at *3-4 (D. Minn. Sept. 27, 2018), *aff'd*, 2018 WL 11301550 (8th Cir. Dec. 3, 2018).

[20] If the Taylor Law triggers First Amendment review at all, it is subject at most to "exacting" (not "strict") scrutiny, under which a speech or association restriction is upheld so long as it serves "'a compelling state interest that cannot be achieved though means significantly less restrictive of associational freedoms.'" *Janus*, 138 S. Ct. at 2465 (quoting *Knox v. Service Employees*, 567 U.S. 298, 310 (2012)). Plaintiffs' cursory and unsupported suggestion that more rigorous review should apply (Br. at 37) is insufficient to preserve the issue for review. *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 n.1 (2d Cir. 2013); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75-76 (2d Cir. 2001).

45

interest sufficient to overcome First Amendment objections in *Abood*, 431 U.S. at 220-21, 224-26, and *Janus* "did not revisit that conclusion." *Mentele*, 916 F.3d at 790; *see Janus*, 138 S. Ct. at 2465-66. To the contrary, *Janus* emphasized that it was "not in any way questioning the foundations of modern labor law." 138 S. Ct. at 2471 n.7. One of the foundations of modern labor law is judicial recognition that achieving and maintaining labor peace is a vital government interest. *Abood*'s holding on this point remains good law and is binding on this Court.

Stare decisis aside, the State plainly has a compelling interest in securing durable labor agreements with public employees, who provide a wide variety of essential services across New York. These include education, police, firefighting, healthcare, sanitation, and transportation, among many other critical state functions. Maintaining peaceful employer-employee relations in these sectors is vital to public health, safety, and welfare. See *supra* at 4-5. And to uphold such relations, it is necessary to prevent the workforce from splintering into factions that would foster conflicting demands for differing employment conditions. Forcing the State to negotiate with multiple groups and to enforce multiple agreements would give rise to interunion rivalries, dissension

in the work force, and confusion about which employees are covered by which contracts. And because agreement with one union would be subject to collateral attack by nonmembers and by rival organizations, any partial labor peace in the absence of exclusive representation would be brittle and transitory. The State has a compelling interest in avoiding such scenarios. *See Janus*, 138 S. Ct. at 2465; *Abood*, 431 U.S. at 220-21; *Mentele*, 916 F.3d at 790-91.

Rather than directly argue the contrary, plaintiffs attempt to change the subject—mischaracterizing the government's interest by suggesting that it relates to "suppressing diverse expression to influence the government" (Br. at 39) or preventing employees from "petition[ing] CUNY for different employment policies" (*id.* at 40). That is *not* the State's interest here, nor does the Taylor Law have any such effect. The Taylor Law does not suppress (or mandate) anyone's expressive or petitioning activity; it simply says that a contract made with the exclusive representative is binding on all employees in the bargaining unit. Employees like plaintiffs are free to express themselves however they want, to petition the government at every level, to seek changes in PSC's or the instructional staff's approach to contract negotiations and

47

political activity, and to form associations to further those First Amendment goals. See *supra* at 15-16 & nn.10-12. The only thing that plaintiffs cannot do is undermine the government's peaceful employment relationship with the instructional staff by making separate employment agreements with CUNY. The State has a compelling interest in that legitimate end.

*Second*, exclusive representation does not violate the First Amendment because plaintiffs do not allege or identify any way in which the State could achieve its compelling interest "though means significantly less restrictive of associational freedoms," *Janus*, 138 S. Ct. at 2465 (quotation marks omitted); *accord Mentele*, 916 F.3d at 791.

Indeed, "it is difficult to imagine an alternative" to exclusive representation "that is '*significantly* less restrictive'" of First Amendment rights than the Taylor Law. *See Mentele*, 916 F.3d at 791. That is because any burden on plaintiffs' associational freedoms is insubstantial. Plaintiffs are not required to join or to financially support PSC, and any "association" that they might have either with PSC or with their bargaining unit has no impact on their underlying First Amendment rights. See *supra* at 31-44. There is little if any burden to alleviate here.

48

Nor is there any identified alternative means of maintaining durable labor peace. To the contrary, exclusive representation is a central and necessary component of American labor-relations law. "Without exclusivity, employee factions would inevitably make conflicting proposals and demands," which state employers would be unable to resolve in an efficient and universally satisfactory manner. *E.g.*, *Branch*, 481 Mass. at 828 n.21 (quotation marks omitted). Exclusive representation is thus "critical to the efficient resolution of labor-management disputes," *id.* at 828, for it is the only viable system through which public-sector employers can avoid the otherwise intractable challenges of reconciling "competing demands of rival representatives" and administering multiple employment agreements across each and every bargaining unit, *see Mentele*, 916 F.3d at 791. As the Supreme Court put it in *Knight*, "[t]he goal of reaching agreement makes it *imperative* for an employer to have before it only one collective view of its employees when negotiating." 465 U.S. at 291 (emphasis added; quotation marks omitted).

Plaintiffs do not make any serious effort to identify an alternative to exclusive representation. They first propose that the State could

"simply not bargain or deal with any union" (Br. at 41)—but accepting that proposed "alternative" would vitiate American labor law. There is no basis in law or in fact for plaintiffs' implausible suggestion that the State could achieve labor peace by abandoning the entire concept of collective bargaining.[21]

In the alternative, plaintiffs propose that the State could allow "dissenting faculty members to disassociate from PSC and leave the bargaining unit, while at the same time continuing to bargain only with PSC." *Id.* But again, plaintiffs' proposal would not advance but undermine the State's interest in labor peace: It would allow any number of individual employees to strike out on their own, preventing the State from securing global resolution of disputes while generating precisely the kind of conflict and confusion that collective bargaining exists to prevent. Nothing in the Constitution requires such a self-negating approach to labor relations.

---

[21] To the extent that plaintiffs mean to suggest that the State could secure labor peace by eliminating public-sector unions while retaining the Taylor Law's prohibition on public-sector strikes, history is to the contrary: When the State tried such a regime prior to the Taylor Law's enactment, it proved ineffective. *See Burns Jackson*, 59 N.Y.2d at 325-26; Donovan, *supra*, at 3-20, 23.

50

# CONCLUSION

The judgment should be affirmed.

Dated:   New York, New York
         July 28, 2023

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for State Appellees

By:   */s/ Cleland B. Welton II*
      CLELAND B. WELTON II
      Assistant Solicitor General

28 Liberty Street
New York, NY 10005
(212) 416-6197

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
CLELAND B. WELTON II
  *Assistant Solicitor General*
      *of Counsel*

51

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure,
Oren L. Zeve, an employee in the Office of the Attorney General of the State
of New York, hereby certifies that according to the word count feature of the
word processing program used to prepare this brief, the brief contains 10,308
words and complies with the typeface requirements and length limits of Rule
32(a)(5)-(7) and Local Rule 32.1.

_/s/ Oren L. Zeve_____