# No. 23-384

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

AVRAHAM GOLDSTEIN; MICHAEL GOLDSTEIN; FRIMETTE KASS-SHRAIBMAN;
MITCHELL LANGBERT; JEFFREY LAX; MARIA PAGANO,

*Plaintiffs-Appellants,*

v.

PROFESSIONAL STAFF CONGRESS/CUNY; CITY UNIVERSITY OF NEW YORK; JOHN
WIRENIUS, in his official capacity as Chairperson of the New York Public Employee
Relations Board; ROSEMARY A. TOWNLEY, in her official capacity as Member of the
New York Public Employee Relations Board; ANTHONY ZUMBOLO, in his official
capacity as Member of the New York Public Employee Relations Board; CITY OF
NEW YORK; THOMAS P. DINAPOLI, in his official capacity as New York State
Comptroller,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**PETITION FOR REHEARING EN BANC**

---

Nathan J. McGrath
Danielle R. Acker Susanj
THE FAIRNESS CENTER
500 North Third Street, Suite 600
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001

William L. Messenger
Milton L. Chappell
Glenn M. Taubman
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Telephone: 703.321.8510

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

RULE 35 STATEMENT ..................................................................................... 1

BACKGROUND.................................................................................................. 2

ARGUMENT ...................................................................................................... 4

    I.  The Panel's Cursory Conclusion That *Knight* Disposed of Constitutional Claims That Were Not at Issue in *Knight* Cannot Be Correct.......................... 5

    II.  The Panel Opinion Glosses Over the Distinct Challenge the Professors Present in Count II ................................................................................ 8

CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*14 Penn Plaza LLC v. Pyett,*
556 U.S. 247 (2009) ................................................................ 1

*Janus v. AFSCME, Council 31,*
585 U.S. 878 (2018) .......................................................... 2, 6, 9

*Jordahl v. Brnovich,*
336 F. Supp. 3d 1016 (D. Ariz. 2018) ................................. 7

*Minn. State Bd. for Cmty. Colls. v. Knight,*
465 U.S. 271 (1984) ..................................................... 1, 5, 6, 7

*NAACP v. Claiborne Hardware Co.,*
458 U.S. 886 (1982) ............................................................. 7

*NLRB v. Allis-Chalmers Mfg. Co.,*
388 U.S. 175 (1967) ........................................................... 2–3

*Roberts v. U.S. Jaycees,*
468 U.S. 609 (1984) ............................................................. 8

**Statutes**

N.Y. Civ. Serv. Law § 201 ..................................................... 3, 9

N.Y. Civ. Serv. Law § 204 ........................................................ 2

**Other Authorities**

THE FEDERALIST No. 10 (James Madison) ............................... 9

## RULE 35 STATEMENT

The State of New York imposes on many of its public employees a system wherein the State vests a union with exclusive authority to speak and contract for employees, including employees who oppose the union. The Supreme Court has recognized "the sacrifice of individual liberty that this system necessarily demands." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 271 (2009).

The sacrifice for Plaintiffs-Appellants is especially great. They are professors with deeply held moral and religious beliefs; most of them are Jews and Zionists. The Professors' exclusive representative—the Professional Staff Congress/CUNY ("PSC")—has engaged in conduct the Professors find anti-Semitic and hateful. The Professors want to wholly disaffiliate themselves from PSC and its speech, as is their right under the First Amendment. But the State of New York is quashing the Professors' exercise of their constitutional right to not associate with PSC by compelling them, against their will, to remain represented by that advocacy group.

The panel opinion claims that a Supreme Court case, *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), found this type of compelled association to be constitutionally permissible. That is not so. *Knight* rejected a challenge to *one* alleged constitutional violation in the context of exclusive representation. That decision did not immunize from challenge *all other* types of constitutional violations that could occur in the context of collective bargaining.

1

A rehearing en banc is necessary under Federal Rule of Appellate Procedure 35 because this proceeding raises an issue of exceptional constitutional importance: The panel's decision wrongly recognizes a constitutional immunity for any violations that arise in the context of collective bargaining, regardless of whether the issue was directly addressed by the Supreme Court in *Knight*.

## BACKGROUND

Plaintiffs-Appellants Avraham Goldstein, Michael Goldstein, Frimette Kass-Shraibman, Mitchell Langbert, Jeffrey Lax, and Maria Pagano ("Professors") are faculty members of the City University of New York ("CUNY") who are forced to associate with an advocacy group that supports anti-Semitic policies the Professors abhor. Specifically, CUNY and the State Appellees[1] require the Professors to accept PSC as their exclusive representative.

New York's Taylor Law provides that, when a union is certified by New York's Public Employment Relations Board ("PERB"), "it shall be the exclusive representative . . . of *all* the employees in the appropriate negotiating unit." N.Y. Civ. Serv. Law § 204 (emphasis added). This includes employees who are not union members. Unions vested with this extraordinary power have the "exclusive right to speak for all the employees in collective bargaining," *Janus v. AFSCME, Council 31*, 585 U.S. 878, 898 (2018), as well as the right to contract for those employees, *NLRB*

---

[1] "State Appellees" refers to Appellees John Wirenius, Rosemary A. Townley, and Anthony Zumbolo, in their official capacities as members of New York Public Employee Relations Board.

2

*v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967); *see* N.Y. Civ. Serv. Law § 201. As a result of the Taylor Law, PSC has legal authority both to speak for the Professors and to enter into binding contracts on their behalf.

The Professors—all but one of whom are Jews and Zionists—want nothing to do with PSC. A primary reason is PSC's support of the so-called "Boycott, Divestment, and Sanctions" ("BDS") movement that the Professors believe vilifies Zionism, disparages the national identity of Jews, and seeks to destroy Israel as a sovereign state. The Professors' opposition to PSC crystalized in June 2021 when PSC adopted a Resolution supporting the BDS movement. Appendix ("A.") 29 ¶ 34; A.262–64. The Professors "believe that this Resolution is openly anti-Semitic and anti-Israel," a belief amply supported by the Resolutions' terms. A.29 ¶ 35. As a result of PSC's Resolution and subsequent conduct, the Jewish Professors have been ostracized on campus based on their identities, religious beliefs, and support for Israel. A.25–29 ¶¶ 28–32, 41.

The Professors "not only oppose PSC's political positions but also disagree with how PSC negotiates their employment terms and conditions." Slip Op. 5. "As full-time faculty, [the Professors] allege that PSC prioritizes the economic and employment interests of part-time adjunct professors and other groups over their own." *Id.*

The Professors "do not want to be associated with, represented by, or linked to PSC in any way." A.30 ¶ 42. But they cannot fully dissociate themselves from PSC

3

without quitting their positions—an option that would effectively allow PSC to drive the Professors, and their disfavored viewpoints, from CUNY. As the panel recognized, "[w]hile all [the Professors] have resigned from union membership in PSC, each remains part of the bargaining unit represented by PSC. PSC and CUNY have entered into various agreements that control the terms and conditions of [the Professors'] employment." Slip Op. 5.

Despite finding the Professors' plight "undeniably sympathetic," A.371, the district court held that *Knight* foreclosed their compelled speech and associational claims. A.370. A panel of this Court affirmed in a per curiam opinion, holding, "The Supreme Court's decision in *Knight* forecloses [the Professors'] claims challenging PSC as their exclusive representative." Slip Op. 8.

## ARGUMENT

The Court should rehear this case en banc because it presents an issue of exceptional importance: whether the Constitution allows a state to prevent individuals from dissociating themselves from an organization that offends the individuals' deeply held religious and moral beliefs. Because the panel opinion wrongly concluded that Supreme Court case law controls this question, and because the panel overlooked distinct issues presented in the Professors' appeal on Count II of their complaint, this Court should grant rehearing en banc.

I. **THE PANEL'S CURSORY CONCLUSION THAT *KNIGHT* DISPOSED OF CONSTITUTIONAL CLAIMS THAT WERE NOT AT ISSUE IN *KNIGHT* CANNOT BE CORRECT**

In *Knight,* the Supreme Court addressed the narrow issue of whether it was constitutional for a government employer to prevent certain employees from participating in its nonpublic meetings with union officials. The opinion states that the "question presented in these cases is whether this restriction on participation in the nonmandatory-subject exchange process violates the constitutional rights of professional employees." 465 U.S. at 273. The Court held it did not because "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Id.* at 283. The Court further reasoned that "[a] person's right to speak is not infringed when government simply ignores that person while listening to others." *Id.* at 288. Consequently, the Court concluded that "[t]he District Court erred in holding that appellees had been unconstitutionally denied an opportunity to participate in their public employer's making of policy." *Id.* at 292.

*Knight* did not address, much less resolve, the Professors' claim that a union's authority to exclusively represent employees compels those individuals to associate with the union and its speech. Nor did *Knight* address the Professors' claim that a bargaining unit is a compelled association of individuals forced together by the government for an expressive purpose.

5

The panel itself recognized that *Knight* supports the proposition that the "First Amendment does not guarantee public employees the right to engage in collective bargaining with their employer." Slip Op. 11. The panel erred in finding that this proposition somehow controls the Professors' compelled association and speech claims. The Professors' lack of a constitutional right to compel CUNY to meet and bargain with them does not change the reality that the Professors have a First Amendment right not to associate with PSC and its speech.

Certainly, the Supreme Court's rejection of one constitutional challenge to one distinct aspect of exclusive representation—that a state employer will not allow persons other than union agents to attend bargaining meetings—does not amount to a declaration that all aspects and applications of exclusive representation are constitutional. *Knight* is not so broad. Indeed, the Supreme Court recently reaffirmed that "[d]esignating a union as the employees' exclusive representative substantially restricts the rights of individual employees" and inflicts "a significant impingement on associational freedoms that would not be tolerated in other contexts." *Janus*, 585 U.S. at 887, 916.

*Knight* is especially inapposite here because what the Professors seek is almost the *opposite* of what the plaintiffs sought in *Knight*. In *Knight*, the plaintiffs demanded a seat at the table in a union's nonpublic meetings with their state employer. *See* 465 U.S. at 273, 282, 283, 285, 288, 289. The plaintiffs' "principal claim [was] that they have a right to force officers of the state acting in an official policymaking capacity to

6

listen to them in a particular formal setting." *Id.* at 282. Here, by contrast, the

Professors do not want to participate in PSC's meetings with CUNY. The Professors

also do not allege it is unconstitutional to exclude them from PSC's meetings.

Rather, the Professors want nothing to do with PSC. They seek to dissociate

themselves from PSC and its objectionable speech. The State of New York, CUNY,

and PSC are violating the Professors' First Amendment rights by preventing them

from escaping PSC's unwanted representation and its bargaining unit.

The Professors' disaffiliating themselves from PSC is itself an affirmative

expressive activity protected by the First Amendment. The action is, in effect, a

boycott of PSC. The First Amendment protects the right of individuals to distance

themselves from, or to boycott, entities for political or ideological reasons or to

express such a message. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911

(1982) (holding that the First Amendment protected the NAACP's deliberate act of

refusing to deal with the businesses in order to make a political point and to pressure

them to change their policies). "*Claiborne* stands for the proposition that collective

boycotting activities undertaken to achieve social, political or economic ends [are]

conduct that is protected by the First Amendment." *Jordahl v. Brnovich*, 336 F. Supp. 3d

1016, 1041 (D. Ariz. 2018), *vacated as moot*, 789 F. App'x 589 (9th Cir. 2020) (non-

precedential).

The Professors want to engage in this type of protected conduct—*i.e.*, to

dissociate themselves from PSC's representation to protest its anti-Semitic positions,

political agenda, and failings as a union. A.25–35. Appellees are violating the Professors' First Amendment rights by prohibiting them from doing so. Because that violation implicates their deeply held religious and moral beliefs, this case presents issues of exceptional importance that justify rehearing en banc.

## II. THE PANEL OPINION GLOSSES OVER THE DISTINCT CHALLENGE THE PROFESSORS PRESENT IN COUNT II

The panel opinion failed to engage with the second, distinct constitutional claim the Professors raise in Count II of their complaint and on appeal—that it violates the First Amendment for the State Appellees, CUNY, and PSC to force the Professors into a mandatory association of CUNY instructional staff. This is a claim addressed nowhere in *Knight*.

The First Amendment guarantees each individual the freedom to band together, or to not band together, with other individuals for expressive purposes. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). "[W]hen the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association . . . may be implicated." *Id.* at 618.

State Appellees, CUNY, and PSC interfere with the Professors' right to select with whom they join in a common endeavor by requiring them to be part of a state-created mandatory association, namely a bargaining unit of all CUNY instructional staff. A.38–39 ¶¶ 99–100. This unit is composed of "tens of thousands of other instructional staff of CUNY . . . who do not share [the Professors'] same economic

8

interests, and who also do not share their beliefs or are overtly hostile to them." A.31 ¶ 48. The Professors would not be part of this mandatory association of CUNY staff if they had the choice. A.39 ¶¶ 103–04. The Professors, however, are forced together into a compulsory association with these disparate individuals by PERB's certification order and the Taylor Law. A.25 ¶ 25; A.38–39 ¶¶ 99–100.

The purpose of this state-imposed association of instructional staff is inherently expressive: to bargain with a state entity (CUNY) for more compensation and over its employment policies. *See* N.Y. Civ. Serv. Law § 201. This is literally "speech" "petition[ing] the government for a redress of grievances" within the meaning of the First Amendment. This speech and petitioning concerns issues that are political in nature and matters of public concern. *Janus*, 585 U.S. at 909–14.

In effect, the Professors are being compelled to be part of a state-organized and defined "faction"—*i.e.*, a group of similarly situated persons who associate together to pursue rent-seeking policy objectives. The problems caused by citizens forming voluntary factions have been recognized since the nation's founding. *See* THE FEDERALIST No. 10 (James Madison). The Founders would have been aghast at the prospect of a government forming, and then forcing dissenting individuals to be part of, mandatory factions for petitioning that government for more benefits.

The panel opinion did not address this claim, which raises a distinct violation of the Professors' constitutionally protected associational rights. Those rights are critical to protect the Professors and empower them to dissociate themselves from a

state-mandated association. This issue, unaddressed by the panel, is one of exceptional

importance meriting en banc rehearing.

## CONCLUSION

For the reasons set forth above, this Court should grant the Professors'

petition for rehearing en banc.

Respectfully submitted,

Dated: April 1, 2024                    /s/Nathan J. McGrath

Nathan J. McGrath
Email: njmcgrath@fairnesscenter.org
Danielle R. Acker Susanj
Email: drasusanj@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001

William L. Messenger
Email: wlm@nrtw.org
Milton L. Chappell
Email: mlc@nrtw.org
Glenn M. Taubman
Email: gmt@nrtw.org
c/o National Right to Work Legal
  Defense Foundation
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Telephone: 703.321.8510

*Attorneys for Plaintiffs-Appellants*

10

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT AND TYPEFACE AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 35(b)(2)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,210 words according to the word-processing system used to prepare this brief.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word in Garamond 14-point font.

Dated: April 1, 2024          /s/Nathan J. McGrath

Nathan J. McGrath
THE FAIRNESS CENTER
500 North Third Street, Suite 600
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001
Email: njmcgrath@fairnesscenter.org

*Attorney for Plaintiffs-Appellants*

# Attachment

Panel Opinion ("Slip. Op.")

# United States Court of Appeals For the Second Circuit

August Term 2023

Argued: November 20, 2023
Decided: March 18, 2024

No. 23-384

AVRAHAM GOLDSTEIN, MICHAEL GOLDSTEIN, FRIMETTE KASS-SHRAIBMAN,
MITCHELL LANGBERT, JEFFREY LAX, MARIA PAGANO,

*Plaintiffs-Appellants,*

*v.*

PROFESSIONAL STAFF CONGRESS/CUNY, CITY UNIVERSITY OF NEW YORK, JOHN
WIRENIUS, IN HIS OFFICIAL CAPACITY AS CHAIRPERSON OF THE NEW YORK PUBLIC
EMPLOYEE RELATIONS BOARD, ROSEMARY A. TOWNLEY, IN HER OFFICIAL CAPACITY
AS MEMBER OF THE NEW YORK PUBLIC EMPLOYEE RELATIONS BOARD, ANTHONY
ZUMBOLO, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NEW YORK PUBLIC
EMPLOYEE RELATIONS BOARD, CITY OF NEW YORK, THOMAS P. DINAPOLI, IN HIS
OFFICIAL CAPACITY AS NEW YORK STATE COMPTROLLER,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of New York
No. 22-cv-321, Paul A. Engelmayer, *Judge.*

Before:    KEARSE, CALABRESI, and NATHAN, *Circuit Judge*s.

Plaintiffs are six full-time professors employed by Defendant the City University of New York and exclusively represented by Defendant Professional Staff Congress/CUNY (PSC) for collective bargaining purposes. Their complaint alleges that New York's Public Employees' Fair Employment Act (the Taylor Law) violates Plaintiffs' First Amendment rights to free speech and association because it requires them to belong to a bargaining unit exclusively represented by PSC. They also challenge Section 209-a.2(c) of the Taylor Law, which allows PSC to decline to represent non-union employees in certain proceedings. Defendants filed motions to dismiss these claims, which the United States District Court for the Southern District of New York (Engelmayer, *J.*) granted.

Plaintiffs appeal the district court's dismissal of their First Amendment claims. We agree with the district court that Plaintiffs' claims are foreclosed by the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). We also agree with the district court that Plaintiffs have failed to allege that Section 209-a.2(c) of the Taylor Law violates the First Amendment. Accordingly, we **AFFIRM** the judgment of the district court.

———

> NATHAN J. MCGRATH, Danielle Susanj, The Fairness Center, Harrisburg, PA (Milton L. Chappell, William L. Messenger, Glenn M. Taubman, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, *on the brief*) *for Plaintiffs-Appellants*.
>
> CLELAND B. WELTON, II (Barbara D. Underwood, Ester Murdukhayeva, *on the brief*) for Letitia James, Attorney General, State of New York, New York, NY, *for Defendants-Appellees City University of New York, John Wirenius, Rosemary A. Townley, Anthony Zumbolo, and Thomas P. DiNapoli.*

2

SCOTT A. KRONLAND, Matthew J. Murray, Altschuler Berzon LLP, San Francisco, CA (Hanan B. Kolko, Cohen Weiss and Simon LLP, New York, NY, *on the brief*) *for Defendant-Appellee Professional Staff Congress/CUNY.*

———

PER CURIAM:

## BACKGROUND

New York's Public Employees' Fair Employment Act, N.Y. Civ. Serv. Law §§ 200, *et seq.*, commonly referred to as the Taylor Law, authorizes public employees to bargain collectively with their employer. Under the Taylor Law, public employees are separated into distinct bargaining units composed of employees who share "a community of interest." *Id.* § 207. A union may then be certified as the exclusive representative for a bargaining unit. *Id.* § 204. Once designated as the exclusive representative, the union is given broad authority to act on behalf of the bargaining unit. Only the exclusive representative may negotiate with the employer over "the terms and conditions of employment" of all employees in the bargaining unit. *Id.* § 204.2. Indeed, the employer is "required

to negotiate collectively" with the exclusive representative and is prohibited from bargaining with anyone else.  *See id.*

Plaintiffs-Appellants Avraham Goldstein, Michael Goldstein, Frimette Kass-Shraibman, Mitchell Langbert, Jeffrey Lax, and Maria Pagano are six full-time professors employed by Defendant-Appellee the City University of New York (CUNY).  Each belongs to the same bargaining unit composed of over 30,000 full-time and part-time faculty and staff of CUNY and the CUNY Research Foundation.  Since 1972, this bargaining unit has been exclusively represented by Defendant-Appellee Professional Staff Congress/CUNY (PSC) for collective bargaining purposes.

PSC engages in political advocacy on issues related to Israel and Palestine with which Plaintiffs "vehemently disagree."  App'x 37.  Five of the six Plaintiffs, who identify as Jewish and Zionists, resigned their membership from PSC in 2021 in response to what they describe as PSC's "anti-Semitic and anti-Israel statements, actions, and positions."  App'x 29.  The sixth Plaintiff, Pagano, resigned around 2010 after PSC allegedly interfered with and refused to represent her in a grievance

proceeding with CUNY.  While all Plaintiffs have resigned from union membership in PSC, each remains part of the bargaining unit represented by PSC. PSC and CUNY have entered into various agreements that control the terms and conditions of Plaintiffs' employment.

Plaintiffs not only oppose PSC's political positions but also disagree with how PSC negotiates their employment terms and conditions.  As full-time faculty, Plaintiffs allege that PSC prioritizes the economic and employment interests of part-time adjunct professors and other groups over their own.

Plaintiffs also take issue with Section 209-a.2(c) of the Taylor Law, which limits PSC's duty of fair representation "to the negotiation or enforcement of the terms of an agreement with [their] public employer" and excludes any obligation to represent non-union members in grievance proceedings, disciplinary matters, or other interactions with CUNY.  N.Y. Civ. Serv. Law § 209-a.2(c).  As non-union members who have expressed vocal opposition to PSC's political views, Plaintiffs believe that PSC will not fairly represent them in these proceedings.

In 2022, Plaintiffs filed suit against PSC, CUNY, the City of New York, and affiliated individuals[1] in their official capacities (collectively, Defendants). Plaintiffs allege that their First Amendment rights to freedom of association are violated by the Taylor Law in two respects. First, it unconstitutionally compels them to associate with PSC and second, it unconstitutionally compels them to associate with the other CUNY instructional staff in their bargaining unit. Plaintiffs also assert that their free speech rights are violated because the Taylor Law authorizes PSC to speak and contract for them.[2]

Defendants filed motions to dismiss. In a thorough and well-reasoned decision, the district court granted the motions to dismiss, concluding that these claims were "necessarily foreclosed" by the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), which remains binding law after *Janus v. AFSCME*, 585 U.S. 878 (2018). *Goldstein v. Pro. Staff*

---

[1] The individual Defendants sued in their official capacities are Chairperson of the New York Public Employee Relations Board (PERB) John Wirenius, PERB members Rosemary A. Townley and Anthony Zumbolo, and New York State Comptroller Thomas P. DiNapoli.

[2] Three of the Plaintiffs also alleged an additional claim that PSC violated their First Amendment rights by continuing to deduct union dues from their wages after they resigned. The parties settled this claim, so it is not before us on appeal.

*Cong./CUNY*, 643 F. Supp. 3d 431, 443 (S.D.N.Y. 2022). The district court also explained that even if *Knight* did not foreclose these claims, the complaint nonetheless failed to state a claim that Plaintiffs' First Amendment free speech or associational rights were violated. The district court also rejected Plaintiffs' challenge to Section 209-a.2(c) of the Taylor Law, which limits the duty of fair representation owed by an exclusive representative to its non-union members.

## DISCUSSION

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Henry v. Cnty. of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021) (quotation marks omitted).

We conclude that PSC's exclusive representation of Plaintiffs in collective bargaining with CUNY does not violate the First Amendment. In reaching our conclusion, we join each of our sister circuits to have addressed this issue since the

Supreme Court's decision in *Janus*.[3]  We also reject Plaintiffs' challenge against

Section 209-a.2(c) of the Taylor Law, which limits the duty of an exclusive

representative to represent non-union employees in certain proceedings.

## I.     PSC as the Exclusive Representative

The Supreme Court's decision in *Knight* forecloses Plaintiffs' claims

challenging PSC as their exclusive representative.  In *Knight*, community college

professors challenged two provisions of a Minnesota law requiring the state to (1)

"meet and negotiate" with the plaintiffs' exclusive representative over

employment terms and conditions, and (2) "meet and confer" with the exclusive

representative on policy questions outside the scope of mandatory bargaining.  465

U.S. at 274–75.  Under the law, "the employer may neither 'meet and negotiate'

---

[3] *See e.g., Peltz-Steele v. UMass Faculty Fed'n*, 60 F.4th 1, 4–8 (1st Cir. 2023); *Adams v. Teamsters Union Loc. 429*, No. 20-1824, 2022 WL 186045, at *2–3 (3d Cir. Jan. 20, 2022) (unpublished); *Uradnik v. Inter Fac. Org.*, 2 F.4th 722, 725–27 (8th Cir. 2021); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 968–70 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 423 (2021); *Bennett v. Council 31 of the AFSCME*, 991 F.3d 724, 727, 733–35 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 423 (2021); *Akers v. Maryland State Educ. Ass'n*, 990 F.3d 375, 382–83 n.3 (4th Cir. 2021); *Ocol v. Chicago Tchrs. Union*, 982 F.3d 529, 532–33 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 423 (2021); *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809, 813–14 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2721 (2021); *Mentele v. Inslee*, 916 F.3d 783, 786–91 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 114 (2019).

nor 'meet and confer' with any members of that bargaining unit except through their exclusive representative." *Id.* at 275.

The Supreme Court summarily upheld the validity of the "meet and negotiate" provision, *Knight v. Minnesota Cmty. Coll. Fac. Ass'n*, 460 U.S. 1048 (1983), and issued a separate opinion concluding that the "meet and confer" provision was also constitutional, *Knight*, 465 U.S. at 273. The Court held that excluding non-union members from "meet and confer" sessions did not violate their First Amendment rights because public employees do not have a "constitutional right to force the government to listen to their views." *Id.* at 283.

Plaintiffs argue that *Knight* does not foreclose their claims because their complaint seeks only to prevent PSC from speaking on their behalf; it does not seek any right to attend meetings between PSC and CUNY. That reading of *Knight* is far too narrow. In *Knight*, the Court explained that excluding non-union members from "meet and confer" sessions to discuss policy questions separate from collective bargaining "in no way restrained [the employees'] freedom to speak on any education-related issue or their freedom to associate or not to

associate with whom they please, including the exclusive representative." *Id.* at 288. The employees' "associational freedom ha[d] not been impaired" because they remained "free to form whatever advocacy groups they like[d]" and were "not required to become members" of the union. *Id.* at 289. Moreover, while the union's "unique status" as the exclusive representative "amplifie[d] its voice in the policymaking process," the Court explained that "[a] person's right to speak is not infringed when government simply ignores that person while listening to others." *Id.* at 288. Therefore, restricting attendance at these meetings to the exclusive representative violated neither the plaintiffs' free speech nor associational rights. *Id.* at 288–90.

For the same reasons, the exclusive collective bargaining regime that Plaintiffs are subject to under the Taylor Law poses no First Amendment problem. Designating PSC as Plaintiffs' exclusive bargaining representative does not impermissibly burden Plaintiffs' ability to speak with, associate with, or not associate with whom they please, including CUNY and PSC. Plaintiffs are free to resign their membership from the union or to engage in public dissent against

10

PSC's views. The prudential pressure that Plaintiffs may reasonably feel to *join* the union—despite their deep objections to its political positions—"is no different from the pressure to join a majority party that persons in the minority always feel" and thus "does not create an unconstitutional inhibition on associational freedom." *See id.* at 290.

Any legal authority that PSC has to negotiate on behalf of Plaintiffs is restricted to the narrow scope of collective bargaining with CUNY. This means only that Plaintiffs may not themselves directly bargain with or select their own representative to bargain with CUNY over their employment terms. However, the First Amendment does not guarantee public employees the right to engage in collective bargaining with their employer. *See id.* at 283 ("[Public employees] have no constitutional right to force the government to listen to their views.").

Despite Plaintiffs' contentions, reading *Knight* to foreclose Plaintiffs' claims does not contravene the Supreme Court's more recent decision in *Janus*, which held that the First Amendment prohibits a public-sector union from assessing mandatory "agency fees" against non-union members of the collective bargaining

unit. 585 U.S. at 929–30. *Janus* invalidated these mandatory agency fees because the First Amendment prohibits "[c]ompelling a person to *subsidize* the speech of other private speakers." *Id.* at 893. But that holding does not undermine the constitutionality of exclusive representation by public-sector unions that do *not* assess mandatory agency fees. To the contrary, as we recognized in a recent opinion, "*Janus* invalidated the collection of agency fees from non-union members but left intact labor-relations systems exactly as they are." *Wheatley v. New York State United Tchrs.*, 80 F.4th 386, 388 (2d Cir. 2023) (quotation marks omitted); *see also Janus*, 585 U.S. at 904–05 n.7 ("[W]e are not in any way questioning the foundations of modern labor law.").

Accordingly, we conclude that Plaintiffs' First Amendment challenges against the designation of PSC as their exclusive bargaining representative are directly foreclosed by *Knight*.

## II. Section 209-a.2(c) of the Taylor Law

We also reject Plaintiffs' contention that Section 209-a.2(c) of the Taylor Law, which limits the fiduciary duty that an exclusive representative owes to non-union

members in its bargaining unit, "exacerbate[s]" and "compound[s]" their First Amendment injuries. Appellant's Br. at 22–24.

Section 209-a.2(c) of the Taylor Law relieves an exclusive representative of any obligation to represent its non-union employees in any "grievance, arbitration or other contractual process concerning the evaluation or discipline of a public employee" where the employee may select their own representative. N.Y. Civ. Serv. Law § 209-a.2(c). Under the duty of fair representation, an exclusive representative must fairly represent all employees, including those who are not union members, when bargaining on their behalf. *See Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 201 (1944). This "duty is a necessary concomitant of the authority that a union seeks when it chooses to serve as the exclusive representative of all the employees in a unit," *Janus*, 585 U.S. at 901, because employees in the unit have no choice but to be represented by the exclusive representative in negotiating their employment terms. Courts have not, however, suggested that the duty of fair representation extends beyond collective bargaining—to proceedings where employees are free to select their own representatives.

13

To the contrary, the Supreme Court has invited the precise approach to exclusive representation adopted by New York's Taylor Law. In invalidating mandatory agency fees, *Janus* rejected an argument that employees who have resigned from union membership should still be required to pay agency fees because the union still represents them in disciplinary proceedings. *See id*. at 900–01. The Court reasoned that unions can "eliminate[]" this "unwanted burden" by simply denying non-union members representation in these proceedings altogether. *See id.*

We therefore disagree with Plaintiffs that the limited fiduciary duty imposed by Section 209-a.2(c) of the Taylor Law burdens their First Amendment rights.

## CONCLUSION

For the reasons stated above, the judgment of the United States District Court for the Southern District of New York is **AFFIRMED**.

14